USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1307 IN RE: DN ASSOCIATES, D/B/A ATLANTIC MOTOR INN __________ CASCO NORTHERN BANK, N.A., Appellant, v. DN ASSOCIATES, D/B/A ATLANTIC MOTOR INN, ET AL., Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Morton A. Brody, U.S. District Judge] ___________________ ____________________ Before Selya and Stahl, Circuit Judges, ______________ and Fuste,* District Judge. ______________ ____________________ Robert J. Keach with whom Foley, Hoag & Eliot, Roger A. Clement, _______________ ____________________ __________________ Jr., and Verrill & Dana were on brief for appellant. ___ ______________ Peter J. DeTroy with whom James D. Poliquin and Norman, Hanson & _______________ _________________ _________________ DeTroy were on brief for appellee DN Associates. ______ Stephen G. Morrell and Eaton, Peabody, Bradford & Veague, P.A. on __________________ ________________________________________ brief for appellees The Pilot Group and Joseph V. O'Donnell. ____________________ September 1, 1993 ____________________ ____________________ *Of the District of Puerto Rico, sitting by designation. FUSTE, District Judge. Casco Northern Bank ("Casco" or FUSTE, District Judge. ______________ "creditor") appeals an order by the United States District Court for the District of Maine affirming the bankruptcy court's award of attorney's fees and expenses to counsel and other professionals of debtor DN Associates ("DN Associates" or "debtor"). After thoroughly reviewing the record on appeal, we affirm the district court's order allowing the fees and expenses. affirm I. I. Background Background __________ We briefly outline the dispositive facts. DN Associates, a limited partnership organized in Maine, purchased the Atlantic Motor Inn immediately before the severe real-estate- value plunge in New England, and ended up filing a Chapter 11 bankruptcy petition on April 19, 1991. DN Associates' attempt at Chapter 11 reorganization came on the heels of Casco's commencement of an action in state court to foreclose on its mortgage of the Atlantic Motor Inn property. DN Associates wanted to reorganize itself and avoid losing the investment of its limited partners by turning its investment into a profitable venture under the protection of the bankruptcy laws. Throughout the ensuing bankruptcy proceedings, DN Associates was represented by James D. Poliquin, of the law firm of Norman, Hanson & DeTroy ("debtor's counsel" or "DN's counsel"). On August 19, 1991, DN Associates, as debtor in possession, filed its first proposed reorganization plan; Casco, a secured creditor and lender of last resort, objected and moved -2- 2 for an appointment of a trustee or, in the alternative, to end debtor's period of exclusivity for proposing a resolution. Casco indicated it would present a plan that provided for 100% payment to unsecured creditors. On September 13, 1991, the bankruptcy court terminated DN Associates' exclusivity under the rationale that the plans offered by DN Associates and by Casco would be best considered simultaneously. DN Associates filed its first amended plan on October 5, 1991, and Casco filed its proposed financial plan on November 25, 1991. Both plans provided 100% payment to unsecured creditors, but DN Associates' proposal would have retained the interests of the limited partners through a recapitalization proposal. Casco's plan differed in that it did not retain the interests of the limited partners and did not attempt to salvage DN Associates' business operation. Following Casco's filing, DN Associates proceeded to offer three different amended plans as alternatives to Casco's proposed financial plan. On April 17, 1992, the bankruptcy court confirmed an amended version of the plan proposed by Casco, thereby rejecting DN Associates' various reorganization alternatives. Soon thereafter, DN's counsel filed an additional fee application seeking approval of $62,898.65 in fees of attorneys and other professionals incurred between September 3, 1991 and April 17, 1992.1 In the bankruptcy court, Casco objected to both the fee award and the subsequent application and sought not only a ____________________ 1Debtor's counsel had already been compensated for $35,000 in fees and expenses incurred before September 3, 1991. -3- 3 disallowance of the final fee award, but also a return of fees previously awarded. The rationale behind Casco's opposition was its understanding that the debtor's continued opposition to Casco's perfectly-reasonable plan and the repeated proposing of alternative plans by debtor's counsel to save the interest of the limited partners was adverse to the estate. On the other hand, debtor's counsel insisted that his efforts were beneficial to the estate and expected to be compensated for his efforts by the bankruptcy court. The record indicates that at least one partially-secured creditor, GIAC, represented by Attorney Fred W. Bopp, agreed in the bankruptcy proceedings that the persistence of DN's counsel in offering alternatives to Casco's plan positively affected the final resolution of the dispute. On August 20, 1992, the bankruptcy court overruled Casco's objections and awarded the requested amount of fees and expenses to DN's counsel and to the other professionals. Five days later, Casco appealed the bankruptcy court's decision to the district court, arguing that DN's counsel represented interests adverse to the estate, and that such rendered services were not necessary and did not benefit the estate as required by statute. On March 10, 1993, the district court affirmed the bankruptcy court, finding that the bankruptcy judge had not abused his discretion or erred in applying the law. Casco now appeals the district court's order on the following four issues: First, whether as a matter of law the district court erred in its choice of the relevant standard of -4- 4 review; second, whether as a matter of law the lower courts applied the wrong standard in ascertaining whether DN's counsel and other professionals performed "actual, necessary services" resulting in benefit to the bankruptcy estate under 11 U.S.C. 330(a); third, whether as a matter of law the lower courts erred by applying the incorrect standard for determining if DN's counsel represented an interest adverse to the estate with regard to the prohibitions detailed at 11 U.S.C. 328(c); and fourth, in the alternative, whether the district court abused its discretion in determining that DN's counsel and other professionals performed "actual, necessary services" resulting in benefit to the estate as required by 11 U.S.C. 330(a). II. II. Relevant Bankruptcy Code Provisions Relevant Bankruptcy Code Provisions ___________________________________ Section 323 (a) of the Bankruptcy Code states that a trustee is the fiduciary of a bankrupt estate, 11 U.S.C. 323(a), and 11 U.S.C. 1107(a) provides that a debtor in possession has similar rights and powers as a trustee. Bankruptcy courts are given the discretionary authority to compensate professionals employed under 11 U.S.C. 327 by an estate trustee or debtor in possession for "actual, necessary services" from estate assets and to similarly reimburse professionals for "actual, necessary expenses." 11 U.S.C. 330(a)(1) - (2); see also 11 U.S.C. 331 (interim compensation ___ ____ by application of professional). By the same token, bankruptcy courts must limit or deny such remuneration if the professionals -5- 5 at issue are found not to be "disinterested" persons2 or if their work does not "benefit" the estate or creditors. 11 U.S.C. 328(c). However, courts may grant attorney's fees even if a conflict of interest is demonstrated, as long as such an award is sensible in light of the circumstances. See In re Kendavis ___ _______________ Industries Int'l, Inc., 91 B.R. 742, 761 (Bankr.N.D.Tex. 1988). ______________________ III. III. Standard of Review Standard of Review __________________ In appeals of bankruptcy court holdings, "we review legal determinations de novo and factual findings on a clearly __ ____ erroneous standard." In re Gonic Realty Trust, 909 F.2d 624, 626 ________________________ (1st Cir. 1990); see also In re G.S.F. Corp., 938 F.2d 1467, 1474 ________ __________________ (1st Cir. 1991) ("the court of appeals independently reviews the bankruptcy court's decision, applying the clearly erroneous standard to findings of fact and de novo review to conclusions of __ ____ law . . . . "); In re Spillane, 884 F.2d 642, 646 (1st Cir. ______________ 1989); Boston and Maine Corp. v. Moore, 776 F.2d 2, 6 (1st Cir. ________________________________ 1985). When we scrutinize factual determinations and discretionary judgments made by a bankruptcy judge, such as may be involved in calculating and fashioning appropriate fee awards, we give considerable deference to the bankruptcy court: ____________________ 2This category of professionals encompasses both "disinterested" persons as well as persons lacking an "adverse interest." See In re Hub Business Forms, Inc., 146 B.R. 315, 318 ___ ______________________________ (Bankr.D.Mass. 1992) (quoting In re Martin, 817 F.2d 175, 180 _____________ (1st Cir. 1987)). -6- 6 Historically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters, and in regard to the terms and conditions of the engagement of professionals . . . . The bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails. In re Martin, 817 F.2d 175, 182 (1st Cir. 1987); see also Boston ____________ ________ ______ and Maine Corp. v. Moore, 776 F.2d 2, 6 (1st Cir. 1985). This _________________________ observation is a reiteration of what Judge Brody noted in his affirmance of the instant bankruptcy court decision that "[such] courts are traditionally granted broad discretion in determining reasonable fee awards." Casco Northern Bank, N.A. v. DN ____________________________________ Associates, No. 92-0219-B, slip op. at 3 (D.Me. Mar. 10, 1993) __________ (citing In re Casco Bay Lines, Inc., 25 B.R. 747, 753 (Bankr.1st ____________________________ Cir. 1982)). Keeping the relevant standards in mind, we now move on to a review of the issues raised in the instant appeal. IV. IV. Discussion Discussion __________ We summarize and dispose of appellant's substantive arguments. We do not reach the question of Casco's appellate standing raised sua sponte by this court. After all, it is ___ ______ settled that an appellate court, confronted by a difficult jurisdictional or quasi-jurisdictional question, may forgo its resolution if the merits of the appeal are, as here, straightforward and easily resolved in favor of the party or parties to whose benefit the objection to jurisdiction would -7- 7 redound. See Norton v. Mathews, 427 U.S. 524, 532 (1976); ___ __________________ Secretary of the Navy v. Avrech, 418 U.S. 676, 677-78 (1974). _______________________________ -8- 8 A. General Standard of Review A. General Standard of Review __________________________ At the outset, appellant contends as a general matter that the district court applied incorrect standards of review in analyzing the instant bankruptcy court decision. We find this argument to be without merit. A district court reviews a bankruptcy court's judgment in the same manner in which we review lower court proceedings. "Findings of fact . . . shall not be set aside unless clearly erroneous . . . . " Fed. R. Bankr. 8013; see North Atl. Fishing, Inc. v. Geremia, 153 B.R. 607, ___, ___ ___________________________________ 1993 U.S. Dist. LEXIS 5984, *7 (D.R.I. May 4, 1993). Applications of law are reviewed de novo and are set aside only __ ____ when they are made in error or constitute an "abuse of discretion." In re Gonic Realty Trust, 909 F.2d 624, 626-27 (1st ________________________ Cir. 1990); In re Carter, 100 B.R. 123, 125 (D.Me. 1989). These ____________ standards were correctly applied by the district court. B. Legal Standard Applied to the Award of Fees B. Legal Standard Applied to the Award of Fees ___________________________________________ Appellant-creditor Casco also objects to the legal standard employed by the district court in reviewing the bankruptcy court's determination that debtor's counsel and other professionals were disinterested persons under 11 U.S.C. 328(c) and performed "actual, necessary services" resulting in a benefit to the estate pursuant to 11 U.S.C. 330(a). Casco also argues that the bankruptcy court erred in its finding that debtor's counsel's work actually benefitted the estate. The thrust of Casco's argument is that the perseverance of DN's counsel in submitting revised reorganization plans, -9- 9 following the proposal of Casco's plan, created no benefit to creditors and demonstrated that DN's counsel was not disinterested, since it sought to preserve investors' interests at the expense of the estate. The district court held that the bankruptcy court's August 20, 1992 decision adequately explained the reasoning for full payment of fees to DN's counsel and other professionals. We agree with both the bankruptcy and the district court's assessment on this issue. DN's counsel's plans provided 100% payment to unsecured creditors just like Casco's proposal; thus, the fact that DN's counsel's proposals attempted to maintain the viability of investments made by DN Associates' limited partners and also the integrity of the overall business operation does not signify that DN's counsel failed to remain disinterested or held an adverse interest to the estate. The bankruptcy court concluded in its factual findings that "DN's course was consistent with its fiduciary duties to all of the estate's constituencies." In re DN Associates, No. 91-20417, ____________________ slip op. at 10 (Bankr.D.Me. Aug. 20, 1992). We agree with the bankruptcy court that [i]t would be unfortunate if courts, looking only at plan provisions removed from context, concluded as a matter of law that a conflict of interest existed whenever a debtor and its counsel, in the face of creditor opposition, pursued a reorganization strategy that, while providing for creditors in a fashion consistent with Chapter 11 priorities, sought to adjust the rights and relations of parties-in-interest so that the interests of equity interest holders could be preserved. -10- 10 Id. at 12-13 (cited in Casco Northern Bank, N.A. v. DN ___ ____________________________________ Associates, No. 92-0219-B, slip op. at 6 (D.Me. Mar. 10, 1993)). __________ In addition, regarding determinations of a "materially adverse interest" pursuant to 11 U.S.C. 327(a), we have rejected an "inflexible", "per se" standard. See In re Martin, 817 F.2d 175, ___ ____________ 183 (1st Cir. 1987). The bankruptcy court was in the best position to observe and analyze DN's counsel's actions and proposals, and that court found that "DN's plan sought to achieve none of [its] results by denying creditors their due. DN proposed that unsecured creditors be paid in full shortly after confirmation; that Casco retain its collateral and be paid its secured claim; and that administrative claims be fully paid." In __ re DN Associates, No. 91-20417, slip op. at 10 (Bankr.D.Me. Aug. _________________ 20, 1992). We find nothing in the record that would lead us to conclude that the bankruptcy court erred or abused its discretion in arriving at its legal determination that DN's counsel was not acting adversely to the estate. As a matter of law, therefore, we affirm what both the bankruptcy court and the district court decided, that DN's counsel was a disinterested person and held no adverse interest to the estate. Both before the district court and the court of appeals, Casco has argued that the bankruptcy court erred in finding that DN's counsel's actions, following Casco's submission of a viable plan, constituted a benefit to the estate. We, like the district court, have interpreted the bankruptcy court's lengthy discussion of interest and disinterest to address -- -11- 11 implicitly if not explicitly -- the benefit issue. The bankruptcy court enumerated several arguably intangible, but nevertheless real, benefits to the estate from DN's counsel's proposals: The plans attempted to protect all interested parties, including creditors and debtor's investors, see In re DN ___ ________ Associates, No. 91-20417, slip op. at 10-13 (Bankr.D.Me. Aug. 20, __________ 1992); DN's counsel's "persistent" actions "spurred" Casco to develop its own plan -- the reorganization eventually approved by the bankruptcy court, see id. at 20; and the resulting zealous, ___ ___ but reasonable, competition between plans and their drafters was constructive. See id. Moreover, as already advanced, counsel ___ ___ for one of the partially-secured creditors, GIAC, testified that the efforts of DN's counsel prompted a benefit in that the pressure of DN Associates' proposals created an atmosphere of constructive competition up until the "eleventh hour" that improved Casco's final amended plan. The bankruptcy court's determinations regarding benefit were highly fact-intensive, and there is no evidence in the record that such findings of fact were clearly erroneous. We cannot disturb both the bankruptcy and district courts' decisions finding as a matter of fact and law that the work performed by DN's counsel between September 3, 1991 and April 17, 1992 provided a benefit to the estate. V. V. Conclusion Conclusion __________ The relevant findings of fact with respect to both the issue of adverse interest and benefit to the estate are not -12- 12 clearly erroneous. The application of law to the facts is well within the range of discretion that we afford bankruptcy courts. We, therefore, affirm the decision of the court below. affirm ______ -13- 13