## In re RALAR DISTRIBUTORS, INC., Debtor.

## BAYBANK–MIDDLESEX, Appellant,

### v.

## RALAR DISTRIBUTORS, INC., et al., Appellees.

### Civ. A. No. 94–30155–MAP.

United States District Court, D. Massachusetts.

May 23, 1995.

---

Charles R. Bennett, Jr., Kevin J. Simard, Riemer & Brainstein, Boston, MA, for appellant BayBank–Middlesex.

Paul R. Salvage, Bacon & Wilson, P.C., Springfield, MA, for appellees Ralar Distributors, Inc. and Halmar Distributors, Inc.

Christopher W. Parker, Boston, MA, for appellee Creditors' Committee.

## MEMORANDUM RE: BANKRUPTCY APPEAL

PONSOR, District Judge.

### I. INTRODUCTION

Before the court is an appeal from the decision of the Bankruptcy Court, *In re Ralar Distributors, Inc.,* 166 B.R. 3 (Bankr. D.Mass.1994). In that decision the bankruptcy judge held that BayBank, a secured creditor of debtor Ralar Distributors, Inc., was not entitled to a superpriority claim for lost interest, fees and costs on its secured claim, pursuant to 11 U.S.C. § 507(b). For the reasons set forth below, the decision of the bankruptcy court will be affirmed.

### II. JURISDICTION AND STANDARD OF REVIEW

■ A federal district court has appellate jurisdiction over the final judgment of a United States Bankruptcy Court sitting within its jurisdiction. 28 U.S.C. § 158. This court must review the decision below *de novo* with respect to rulings of law and use a clearly erroneous standard with respect to findings of fact. *In re DN Associates,* 3 F.3d 512, 515 (1st Cir.1993); Fed.R.Bankr.P. 8013. Applications of law are set aside only when they are made in error or constitute an abuse of discretion. *Id.* However, the application of a statutory provision to particular facts poses a mixed question of law and fact and, in this respect, the court's ruling is "subject to the clearly erroneous standard, unless the bankruptcy court's analysis was infected by legal error." *William v. Poulos,* 11 F.3d 271, 278 (1st Cir.1993). Finally, a reviewing court gives considerable deference to the factual determinations and discretionary judgments of the bankruptcy judge. *In re DN Associates,* 3 F.3d at 515.

## III. FACTUAL AND PROCEDURAL BACKGROUND

The following facts were well supported by the record before the bankruptcy judge.

Ralar Distributors, Inc., a wholesale distributor of household and hardware items, and its parent corporation, Halmar Distributors, Inc. (hereinafter referred to collectively as "Ralar" or the "debtors"), filed voluntary petitions for Chapter 11 relief on October 16, 1989. As of that date, Ralar owed BayBank, its primary secured creditor, $10 million: $7 million was owed on a revolving loan agreement, secured by a first lien on inventory and accounts receivable; another $3 million was owed on a term note secured by a real estate mortgage.

Ralar sought the protection of Chapter 11 because of a serious cash shortfall that left it unable to purchase inventory. The problem facing the debtor was that the considerable and readily saleable inventory it had on hand was of an unfortunate mix. In order to fill outstanding orders, Ralar needed to purchase certain faster-moving items to balance its inventory of slower-moving seasonal products and thereby meet its customers' orders. Without a considerable infusion of cash collateral to purchase additional items, Ralar's inventory could not be reduced without taking a considerable loss. At the time Ralar filed its bankruptcy petition, approximately $10 million in inventory sat in the company's warehouse, roughly equivalent to, but certainly not more than, the principal on the secured debt it owed BayBank. In addition to the outstanding monies owed to BayBank, Ralar was indebted to its trade creditors in the amount somewhere between $16 and $19 million.

After the filing of the bankruptcy petition, Ralar and BayBank reached an impasse in their efforts to negotiate an agreement permitting the debtors' postpetition use of the bank's cash and non-cash collateral. Ultimately, BayBank refused to extend any further credit to Ralar. Thereafter, under 11 U.S.C. § 362(a), the bankruptcy court granted Ralar an automatic stay from creditors' enforcement of liens. BayBank then sought relief from the automatic stay under 11 U.S.C. § 362(d)(1) in order to foreclose on the loan agreements and to effect an immediate liquidation of an inventory comprised of more than 10,000 items.

The court denied BayBank's motion to lift the stay. The court reasoned that all creditors—including BayBank—would benefit from a liquidation by Ralar through continued sales to its customers. Ralar's intimate knowledge of the vast array of products in its warehouse and BayBank's lack of familiarity with Ralar's customers almost guaranteed that the prices Ralar would be able to realize on inventory would far exceed the liquidation values BayBank was capable of realizing. The court also believed that this strategy held out the possibility of the business being sold as an ongoing concern.

Over the course of the next four months, the court authorized the debtors to use BayBank's cash collateral and secured receivables to make additional inventory purchases. See 11 U.S.C. § 363. The bankruptcy court accomplished this through a series of § 363 "cash collateral" hearings held between October 17, 1989 and March 4, 1990. In the course of four hearings, the court issued from the bench the following rulings and made the following findings.

On November 9, 1989, the court authorized Ralar to use $2.6 million of BayBank's cash collateral in its possession to purchase inventory and to cover operating expenses. Judge Queenan reasonably found that BayBank's alternative proposal for an immediate foreclosure and liquidation by the creditor would "produce a disaster for all, and certainly for the bank." Hearing Transcript, Ex. 6, Appellee's Appendix to its Brief. The bank was granted a lien on newly purchased inventory to ensure adequate protection of its cash collateral.

At the next hearing on December 5, 1989, the court authorized the use of $2.5 million of cash collateral, finding that the debtor was conducting a reasonable plan of liquidation. Judge Queenan also made the finding that "for the present ... the automatic stay is not causing the bank's secured claim to be reduced in value" and that the "bank does have adequate protection." Hearing Transcript, Ex. 7, Appellee's Appendix at 63. Again, the

court granted the bank a lien on the inventory to be purchased "with the same validity" that the bank had prior to the filing. *Id.* at 66.

A third cash collateral hearing was held on January 12, 1990. With certain reservations, the court authorized the debtor to use $2.4 million in cash collateral to facilitate continued inventory reduction. The court noted a marked slowdown in the amount of reduction of the bank's debt, but pointed out that the volume of inventory continued to decrease. By this time, the court considered it less likely that the business would be sold as an ongoing concern. Even so, the judge found that a foreclosure and liquidation by the bank at this point would net creditors a lower return than continued liquidation by Ralar.

At the January, 1990 hearing the court also made an express finding that the bank's secured claim had not been reduced in value from the point when Ralar filed its bankruptcy petition. However, the court noted that losses would occur and "we're going to get to the point soon where I'm going to make a determination that these losses, if they continue further, will in essence reduce what the bank could bring about.... It's a very close call." Hearing Transcript, Ex. 8, Appellee's Appendix at 71.

Finally, in the last cash collateral hearing held February 14, 1990, the court authorized Ralar to use $1.2 million in cash collateral to purchase inventory and pay operating expenses.

Throughout this period of inventory liquidation, the court regularly provided BayBank with adequate protection in the form of repayments of its obligations from the proceeds of the inventory sales and additional liens on the replenished inventory purchased with the bank's cash collateral. Ralar also decreased its payroll, gradually laying off its employees as its business shrank.

At each hearing the court provided BayBank with adequate protection to preserve the value of the creditor's interest in the collateral and consequently denied each of BayBank's renewed motions to lift the automatic stay. On March 4, 1990, Ralar and Baybank reached an agreement that provided for the turnover of the remaining collateral to BayBank. The bank then proceeded to liquidate the remaining assets. The ultimate result was that BayBank received full satisfaction of its principal claim in the amount of $10 million.

Despite its recovery of the entire principal, BayBank claimed that it was still owed $2,212,168 in the form of administrative expenses as defined by 11 U.S.C. § 503(b) or unpaid postpetition interest as defined by 11 U.S.C. § 506(b). In either case, BayBank argued that its claim in excess of $2 million for interest and expenses was entitled a superpriority status pursuant to Section 507(b) of the Bankruptcy Code.

On November 16, 1993, the bankruptcy judge held a hearing to determine whether BayBank's claim for interest, fees and costs was subject to the court's adequate protection orders and whether there was a subsequent failure of adequate protection which gave rise to a § 507(b) superpriority claim. The parties agreed that disputed factual issues existed, particularly whether the court's adequate protection orders issued in the course of the debtor's ongoing liquidation proved inadequate. At hearing the parties concurred with the court's decision to take no further evidence on this issue and to rule on BayBank's § 507(b) claim as a matter of law. *See In re Ralar,* 166 B.R. 3 (Bankr.D.Mass. 1994).

The bankruptcy court held that BayBank did *not* have a superpriority claim under 11 U.S.C. 507(b), because the lost interest was not an administrative expense for the costs and expenses of preserving the bankruptcy estate as defined in 11 U.S.C. §§ 503 and 507. Absent a viable administrative expense claim, Judge Queenan held as a matter of law that there could be no failure of adequate protection. Based on previous factual findings made in the course of the four cash collateral hearings, Judge Queenan also held that BayBank was an undersecured creditor, i.e. that it did not have any collateral value cushion above the amount of debt it was owed. For this reason, BayBank was not entitled to accrue interest and be reimbursed for legal expenses under 11 U.S.C. § 506(b).

## IV. *DISCUSSION*

The Bankruptcy Code protects a secured creditor against depreciation of its collateral during the reorganization period. Pursuant to 11 U.S.C. §§ 361 and 362, a bankruptcy court may provide adequate protection of the creditor's interest by ordering periodic cash payments, replacement liens or other relief except the granting of a § 503(b)(1) administrative expense. *See* 2 Lawrence P. King, *Collier on Bankruptcy*, §§ 361.01 and 362.02 (15th ed. 1990). If adequate protection of the creditor's interest is not feasible, the creditor may be granted relief from the automatic stay to repossess its collateral. 11 U.S.C. § 362(a) and § 362(d)(1); *See United States Savings Assn. v. Timbers of Inwood Forest*, 484 U.S. 365, 368–371, 108 S.Ct. 626, 629–631, 98 L.Ed.2d 740 (1988). Short of that remedy, the court may prohibit or condition the debtor-in-possession's use of the creditor's collateral in order to assure adequate protection of the creditor's interest in the property. 11 U.S.C. § 363(e).

Appellant BayBank raises three issues on appeal, each supporting its overarching claim that the adequate protection orders of the court failed to protect the bank's interest in its collateral. First, BayBank contends that Ralar's use of its cash collateral caused a diminution in its value, which constituted an administrative expense under §§ 503 and 507 of the Bankruptcy Code. Second, the bank maintains that the court's automatic stay prevented it from early recovery of its cash collateral and a concomitant ability to earn interest. BayBank therefore claims that it is entitled to postpetition interest under Code section 506(b). Third, BayBank claims that, to the degree the court's ruling rested on factual findings, it was clearly erroneous and should be overturned.

### A. *BayBank's Administrative Expense Claim*

■ A creditor whose interest in property is used by the debtor in the course of a bankruptcy may be entitled to a superpriority administrative claim pursuant to 11 U.S.C. § 507(b). Section 507(b) of the Code provides in relevant part:

If the trustee ... provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor, and if, notwithstanding such protection, such creditor has a claim allowable under subsection [507](a)(1) of this section ... from the use, sale or lease of such property ... then such creditor's claim ... shall have priority over every other claim under subsection.

It is obvious from this language that, as a threshold matter, in order to invoke the superpriority of § 507(b), a creditor must have an administrative claim as defined in § 507(a)(1). In turn, § 507 states in relevant part: "(a) the following expenses and claims have priority in the following order: (1) First, administrative expenses allowed under 503(b) of this title." Administrative expenses are defined as "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. 503(b)(1)(A).

■ The longstanding rule in this circuit is that a secured creditor's § 503(b)(1)(A) administrative expenses may be awarded superpriority under § 507(b) only if (1) the debt arises from a "transaction with the debtor-in-possession ... [and (2) ] only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business." *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976). *See also In re Hemingway Transport, Inc.*, 954 F.2d 1, 5 (1st Cir.1992).

BayBank's argument fails to pass the first prong of the *Mammoth Mart* test. Here, the lost interest and other costs, purportedly worth more than $2 million to the creditor, did not arise from a "transaction with the debtor-in-possession." It is quite plain that all of BayBank's claim is based on its prepetition loan dealings with Ralar. As a matter of policy Congress granted priority to administrative claims of third parties who extend *postpetition* credit to debtors as an inducement to promote reorganization of the estate. *In re Hemingway Transport, Inc.*, 954 F.2d at 5, citing *In re Mammoth Mart*, 536 F.2d at 954 ("right to payment predicated on an

executed prepetition contract is not entitled to priority payment as an administrative expense"). In this instance, BayBank extended no new credit after Ralar filed its Chapter 11 petition. As Judge Queenan aptly noted, the bank is seeking an administrative expense despite the fact that it refused to transact any loans with the debtor-in-possession.

Even if BayBank was able to satisfy the first prong of the *Mammoth Mart* test, it would still be required to show that the debtor induced the creditor's performance to the benefit of the estate. *In re Finley, Kumble, et al.,* 160 B.R. 882, 889–890 (Bankr. S.D.N.Y.1993). As noted above, there was clearly no inducement by Ralar. The debtor's right to use of the collateral was not negotiated by the parties; it was ordered by the bankruptcy court. BayBank is not entitled to a superpriority administrative expense under § 507(a)(1) since its claim for lost interest arose from a prepetition transaction with Ralar.

B. *Postpetition Interest under § 506(b)*

■ As an alternative theory of recovery BayBank contends that the court's adequate protection orders failed to protect interest that accrued on its cash collateral holdings subsequent to the filing of Ralar's bankruptcy petition. The bank maintains that it is entitled to a superpriority claim for this postpetition interest.

As a threshold matter, a creditor is only entitled to receive postpetition interest on its claim if it is oversecured. 11 U.S.C. § 506(b); *United Savings Assn. of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988) (hereinafter *"Timbers"*). Section 506(b) grants a creditor oversecured at the time of an automatic stay adequate protection in the form of postpetition interest to the extent that the value of the collateral exceeds the principal of the debt.[1] By the same token, under § 506(b), an undersecured creditor is entitled to no interest because there is no equity cushion from which to obtain inter-

est. *Timbers,* 484 U.S. at 372–373, 108 S.Ct. at 630–31. As a policy matter, providing the undersecured creditor with postpetition interest would leave it in a better position than it found itself in at the time of the filing of the automatic stay. *Id.; In re Public Service Company of New Hampshire,* 108 B.R. 854, 876 (Bankr.D.N.H.1989).

In this case, the bankruptcy court held a series of cash collateral hearings pursuant to § 363 of the Code. Given the factually intensive nature of these hearings and absent record evidence to the contrary, this court must of course defer to the bankruptcy court's factual determinations in this area. *In re DN Associates,* 3 F.3d at 515.

In the course of these hearings the court was required to determine the value of BayBank's collateral and the degree to which the bank, as the primary creditor, was entitled to adequate protection for the debtor's use of its cash collateral. At the time the court granted Ralar the initial automatic stay, Judge Queenan determined that BayBank was either *undersecured* or at most *fully secured.* The court most certainly *never* found that BayBank was oversecured, i.e. that the bank's collateral was valued at more than its lien. Consequently, the court's adequate protection orders could only protect BayBank's claim to the extent of the loan value which was less than or possibly equal to the value of the cash collateral in Ralar's possession. The court therefore correctly held that BayBank had no claim for postpetition interest under § 506(b).

C. *The Factual Findings and the Clearly Erroneous Standard*

■ BayBank's final argument is based on the fact that the court took no evidence at the November 16, 1993 hearing to determine whether the bank was in fact adequately protected by the court's prior rulings. BayBank argues that the court did not rule on the issue of superpriority as a matter of law as it said it would do, but instead erroneously relied on factual findings made during the

---

1. 11 U.S.C. § 506(b) provides in relevant part that "[t]o the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

cash collateral hearings, denying the bank an opportunity to present evidence in defense of its position. Given the legal basis upon which this court upholds the decision of the bankruptcy court,[2] the bank's position is without merit.

During the November, 1993 hearing the court expressed its view that an evidentiary hearing would be required to determine whether BayBank ended up better off under the debtor's gradual liquidation program than it would have if the court granted early relief from the stay permitting BayBank to liquidate its collateral on its own. Hearing Transcript, Ex. 3, at 42, Appendix to Appellant's Brief. Obviously, if BayBank proved to be better off under the court's plan, then there would have been no diminution in collateral value due to the stay and there could be no failure of adequate protection. Ultimately, however, the court avoided this route entirely, deciding not to take evidence on the issue of failed adequate protection and instead ruled in favor of the debtor on purely legal grounds. *Id.* at 43.

First, the court ruled, as a matter of law, that BayBank was not entitled to an administrative expense priority because it had not engaged in postpetition transactions with the debtor in possession. *In re Ralar,* 166 B.R. at 8. As noted above, this was a purely legal ruling totally in line with the applicable test set forth in *Mammoth Mart,* 536 F.2d 950 (1976).

Second, in the course of the cash collateral hearings Judge Queenan held that at the time of the filing of the automatic stay, BayBank was an undersecured creditor. *Id.* at 5. Based on this factual finding this court has held that BayBank is not entitled to postpetition interest and fees pursuant to § 506(b). This court's decision comports with the Supreme Court's decision in *Timbers.* Moreover, the bankruptcy court rightly relied on its previous findings of fact made during the cash collateral hearings in its final opinion on the issue of the creditor's lack of entitlement to postpetition interest.

Contrary to the creditor's position, it was well within the bankruptcy court's discretion and the law of the case doctrine to reach back to previous hearings pertaining to the legal matters at hand and reiterate prior findings of fact to decide the issues of law currently before the bench. At the same time, the court's strictly legal rulings on the administrative expense and § 506(b) claims made taking further evidence unnecessary and rendered unnecessary a decision on the issue of failed adequate protection. *See supra* n. 2.

Moreover, BayBank asks this reviewing court to hold that reliance on the factual findings made in the course of the cash collateral hearings was erroneous as a matter of procedure. Appellant, however, points to no specific evidence in the ample record below which undermines the bankruptcy's court's findings. Nor has the appellant argued that the court was in error because it applied an incorrect legal standard to the facts, for example by using the wrong standard to value the creditor's collateral.

BayBank has not pointed to anything in the record, or even suggested any evidence it might have offered, which might undermine the court's factual findings. Given the lack of substantive evidence challenging Judge Queenan's finding that BayBank was an undersecured creditor, this court must conclude that there was nothing erroneous in the court's factual premises for its decision and uphold the bankruptcy judge's factual findings and conclusions of law on this issue. It was not necessary for the judge to reopen hearings on a matter he had already thoroughly considered.

## V. *CONCLUSION*

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED. A separate order will issue.

**2.** To the degree Judge Queenan's final written opinion might be interpreted as making findings in regard to failed adequate protection, it has not been necessary for this court to review or adopt these findings in rendering this decision.