In re Edward J. CHOINSKI and Mildred B. Choinski.

Richard J. BIRCH, Plaintiff/Appellant,

v.

Edward J. CHOINSKI and Mildred B. Choinski, Defendant/Appellees.

BAP No. MW 97–013.

United States Bankruptcy Appellate Panel of the First Circuit.

Nov. 18, 1997.

John R. Getsinger was on brief for Appellant.

Richard S. Hackel was on brief for Appellees.

Before VOTOLATO, HAINES and VAUGHN, Bankruptcy Judges.

### Memorandum of Decision

HAINES, Bankruptcy Judge.

After taking testimony and considering Richard Birch's offer of proof, the bankruptcy court concluded that Birch, a creditor of Epicor Technology, Inc., a Chapter 7 debtor in its own right, had no claim against Chapter 13 debtors Edward and Mildred Choinski, Epicor's principals. For the reasons set forth below, we affirm.

### Background

Following a twenty-year career at Polaroid Corporation, Edward Choinski ("Choinski") left to develop commercial applications for "coating technology." (Transcript of February 7, 1997, Evidentiary Hearing at 350), [hereinafter "Tr."].[1] To that end, he incorporated Multitek, Inc., in 1984. Multitek later became known as Epicor. (Tr. at 34.)[2]

Choinski and his wife contributed $4,500.00 to Epicor's initial capitalization in return for ninety percent of the corporate stock. (Tr. at 38.) Noel Pasternak, Esq., who provided legal services to Choinski and Epicor, contributed $500.00 and received ten percent of the stock. (Tr. at 38–39.) Epicor's paid-in

---

**1.** Choinski described "coating technology" as "the field of applying thin films, usually liquid films" to surfaces. (Tr. at 35.)

**2.** For simplicity's sake, we will refer to the corporation as "Epicor" for the balance of this memorandum.

capital remained at $5,000.00 for the duration of its active life. (Tr. at 41.)

Over the years Epicor developed and sold several prototype machines and obtained a few patents, but it remained perpetually cash poor. (Tr. at 42–48, 52.) To keep the business afloat, Choinski regularly provided it with additional cash—to the tune of approximately $186,000.00 from 1986 through 1995. (Tr. at 73; Debtor's Ex. 1.) Each of the cash infusions was documented as a loan from Choinski to Epicor. (Tr. at 22.) Each carried interest at fifteen percent, was recorded as a loan on Epicor's books, and was disclosed as such on its financial statements. (Tr. at 22–25, 33; Creditor's Ex. 9.)

Epicor at first periodically paid Choinski interest on the loans, but its income was insufficiently reliable to enable it to do so consistently. (Tr. at 52.) Ultimately, it paid Choinski as it was able—a total of $106,917.00 from 1987 through 1985. As often as not, no sooner was Choinski paid on a loan than he would re-advance funds (as a new loan) to pay for operations. (Tr. at 72–73; Debtor's Ex. 1.) [3]

Even with the Choinski loans, Epicor could not pay its way. Birch, who commenced serving as the company's primary patent attorney in 1985, became its largest creditor soon thereafter. (Tr. at 61, 106, 108–09; Creditor's Exs. 12, 13.) As his unpaid fees and out-of-pocket expenses mounted, Birch pressed for payment. Epicor kept him at bay with a series of concessions and an inconsistent stream of partial payments. From 1987 through 1995, it paid Birch a total of $95,105.00. (Debtor's Ex. 1.)

In 1988, with $63,058.79 in unpaid bills, Birch threatened suit. (Tr. at 141; Creditor's Ex. 12.) Epicor gave him a stock option in exchange for a one-year stand-still agreement. (Tr. at 142; Creditor's Ex. 12.) The option, exercisable for five years from its July 18, 1988, issue date, provided that Birch could acquire up to three percent of the corporation's stock and that for each share purchased he would credit $2,102.00 against the outstanding balance on his unpaid bill. (Creditor's Ex. 12.) Birch never exercised the option.

The one-year stand-still period expired. Birch, still unpaid, filed suit, but dismissed his claims when Epicor provided him a $73,513.48 demand promissory note. (Tr. at 142; Creditor's Ex. 13.) Birch sued on the note in 1992, obtained a consent judgment for $124,651.76 against the corporation on September 14, 1994, (Creditor's Ex. 17), and pursued Epicor into Chapter 7. In the meantime, on June 27, 1994, Edward and Mildred Choinski filed their own joint petition for Chapter 13 relief.

In the Choinskis' Chapter 13 case, Birch filed a proof of claim for $398,382.20, asserting that the Choinskis (principally Edward) personally owed him $158,191.00 under the defaulted Epicor promissory note. (Appendix on Appeal at 8–15, 18), [hereinafter "App."]. Birch also included a claim for multiple damages pursuant to Massachusetts statutes. (App. at 8, 16–17.) The Choinskis objected. (App. at 116–17.)

When all was said and done, Birch's second amended proof of claim asserted the following four grounds for liability: (1) an equitable lien on corporate assets traceable into the Choinskis' hands; (2) the Choinskis' (statutory) personal liability as corporate directors (3) the Choinskis' personal liability as officers, directors or "controlling persons" under the Massachusetts "Blue Sky" laws for misrepresentations and material nondisclosure in connection with issuance of the stock option; and (4) the Choinskis' (common law) personal liability as officers and directors of an insolvent corporation for breach of fiducia-

---

**3.** Epicor was a promising, if speculative, venture in Mr. Choinski's view. Although he investigated opportunities to attract private capital, he was certain that he could not obtain bank financing and, therefore, did not pursue it. (Tr. at 46.)

In 1986 Epicor paid Choinski $7,000.00 per month in salary. (Tr. at 61–62.) It paid him no salary thereafter. (Tr. at 62.) To obtain the funds that he loaned Epicor, and to pay his own living expenses after 1986, Choinski deeply mined his (and his wife's) personal resources. He drew on his Polaroid retirement fund, placed a second mortgage on his home, cashed at least one life insurance policy, and borrowed from family members. Mrs. Choinski liquidated personal investments and provided funds from an inheritance and from her own retirement fund. (Tr. at 50–51.)

ry duties to the corporation's creditors. (App. at 127–31, 135.)

In response to the debtors' "supplemental objection" to his amended proof of claim, Birch acknowledged that some of the theories (i.e., fraudulent transfer theories) upon which his claims rested were Epicor' s, not his. He transferred those claims to Epicor's Chapter 7 trustee. (App. at 142.)

The bankruptcy court set trial on the Choinskis' objections to the Epicor trustee's claims and to Birch's claims for the same day. (App. at 144–45.) Following those hearings, the court disallowed Birch's claims as well as those of the Epicor trustee. (App. at 154, 166–68, 177–78.) Birch appealed. Epicor's trustee did not.

### Discussion

Birch's assignments of error are manifold. But exhaustive review of the record discloses that none is meritorious. Categorizing his contentions as best we can from his brief, they fall into two broad classes: asserted procedural unfairness and erroneous substantive rulings.[4] We address each in turn.

#### 1. Standard of Review.

■ We apply "the 'clearly erroneous' standard to findings of fact and de novo review to conclusions of law." Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir.1994) (quoting In re SPM Mfg. Corp., 984 F.2d 1305, 1310–11 (1st Cir.1993). See also Baybank–Middlesex v. Ralar Distribs., Inc. (In re Ralar Distribs., Inc.), 182 B.R. 81, 82 (Bankr.D.Mass.1995)) (accord).

■ With respect to the court's decisions regarding trial structure, we apply an "abuse of discretion" standard. Litigation management decisions fall within the ambit of the trial court's broad discretionary powers. This standard of review is a narrow one. See Coleman v. Kaye 87 F.3d 1491, 1509 (3d Cir.1996) ("We can find an abuse of discretion" only if "no reasonable man" would have so structured the proceedings); see also In

re Chevron U.S.A., Inc., 109 F.3d 1016, 1018 (5th Cir.1997) (standard of review for trial court's case management decisions is a "deferential one that recognizes the fact that the trial judge is in a much better position than an appellate court to formulate an appropriate methodology for a trial"); Ayala–Gerena v. Bristol Myers–Squibb Co., 95 F.3d 86, 91 (1st Cir.1996) ("the trial judge has broad discretion in ruling on pre-trial management matters, and we review the district court's denial of discovery for abuse of its considerable discretion"); Kinkead v. Southwestern Bell Tel. Co., 49 F.3d 454, 457 (8th Cir.1995) ("The standard for review of the district court's refusal to compel discovery is one of gross abuse of discretion."); Graefenhain v. Pabst Brewing Co., 870 F.2d 1198, 1206 (7th Cir.1989) ("As with other matters of trial management, the district court has 'broad discretion' to decide whether to hold a party to its stipulations; the district court's decision will be overturned on appeal only where the court has clearly and unmistakably abused its discretion."); United States v. Goode, 814 F.2d 1353, 1354 (9th Cir.1987) ("We review a district court's decision on trial management for abuse of discretion.").

■ The court's application of law to the particular facts of this case "poses a mixed question of law and fact, subject to the clearly erroneous standard, unless the bankruptcy court's analysis was 'infected by legal error.'" Winthrop Old Farm Nurseries, Inc. v. New Bedford Inst. for Sav. (In re Winthrop Old Farm Nurseries, Inc.), 50 F.3d 72, 73 (1st Cir.1995) (quoting Williams v. Poulos, 11 F.3d 271, 278 (1st Cir.1993)). See Tucker v. Nestor (In re Nestor) 202 B.R. 181, 183 (D.Mass.1996) (accord); see also Dahar v. Raytheon Co. (In re Navigation Technology Corp.), 880 F.2d 1491, 1493 (1st Cir.1989) (describing question of whether an assignment created a security interest as mixed question of law and fact subject to review for clear error).

■ As a reviewing court, we give "considerable deference" to the "factual determina-

---

4. We consider Birch's claims "as best we can" because the quality of his briefing leaves much to be desired. Shotgun-style, it raises (and in places quickly discards) myriad issues. At sever-

al points it devolves into a series of abbreviations and sentence fragments. We do not commend it as a model of effective appellate advocacy.

tions and discretionary judgments made by a bankruptcy judge." *Casco Northern Bank v. DN Associates (In re DN Associates)*, 3 F.3d 512, 515 (1st Cir.1993). We must pay "[p]articular deference" to the bankruptcy court's findings concerning the credibility of witnesses and the weight accorded this testimony. *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir.1997). *See also* Fed. R. Bankr.P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

*2. Procedural Fairness.*

Birch complains that the bankruptcy judge unfairly "bifurcated" the trial, requiring that the Epicor trustee's fraudulent transfer claims be tried first before proceeding to Birch's personal claims. He also asserts that it was unfair, following an oral decision disallowing the trustee's claims, for the judge to require an offer of proof and, after hearing the proffer, to disallow his claims without taking further evidence. We disagree.

■ With the parties' agreement, the court set hearings on both the Epicor trustee's claims and Birch's claims for the same day. When that day arrived the court determined that the Epicor trustee's fraudulent transfer claims would be heard first. The court did so in an effort to expedite trial and to make good use of the witnesses' time. This was done after full consultation with counsel. Birch's attorney did not object.

■ The judge's chosen trial structure did not even approach abuse of discretion in these circumstances. *See* Fed.R.Civ.P. 61 ("No error … in anything done or omitted by the court … is ground for … disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice"); *e.g., Davet v. Maccarone*, 973 F.2d 22, 30 n. 6 (1st Cir.1992) (holding that, while the unusual timing of directed verdict may have predisposed jury

towards a particular result and that the "simple facts" of the case probably did not merit the decision to bifurcate the trial, court's "trial management decision" did not work an "actionable injustice"); *United States v. Moore*, 923 F.2d 910, 913 (1st Cir.1991) (scheduling of lunch break after government's closing fell "well within the scope of its discretionary trial-management authority"); *Goode*, 814 F.2d at 1355 (ordering the government to make an opening to all prospective jurors was within the court's "broad discretion in determining the conduct and order of trial"). In any event, Birch waived the issue when he failed to object. *See Maccarone*, 973 F.2d at 30 n. 6.

Neither did Birch object when the court required him to provide an offer of proof for his claims. After the trustee's evidentiary presentation on Epicor's fraudulent transfer claims, the bankruptcy judge rendered oral findings of fact and conclusions of law disallowing those claims. (Tr. at 128–30.)[5] The judge ruled that the Choinskis' advances to Epicor were "true loans," as opposed to capital contributions, that the corporation's payments to the Choinskis were repayments of money that had actually been provided to it, and that the payments were, therefore, made for value sufficient to defeat a fraudulent transfer claim. (Tr. at 129–30.) *See* § 548(d)(2)(A) ("value" includes satisfaction of an antecedent debt). The judge then asked Birch's counsel to "elucidate ·… these claims of yours" and counsel responded that he was "very happy to do so because at long last they [were] beginning to simplify in [his] mind." (Tr. at 131.)

Extended colloquy between the court and Birch's counsel ensued, during which counsel was provided unbridled opportunity to explain all of the legal and factual bases for Birch's assertion that the Choinskis were personally liable to him. (Tr. at 134–54.) The court, without objection from Birch's counsel, even adjourned briefly to review the statutes and case law upon which Birch's theories were pinned. (Tr. at 155.) The discussion continued, still without objection,

---

**5.** Birch's counsel participated fully in the entire consolidated hearing because the evidence (and the court's factual findings) that pertained to the trustee's claims was pertinent to Birch's claims, as well.

after the judge returned to the courtroom and asked for "a bit more of an opening from counsel and offer of proof and all from counsel for Mr. Birch" with particular regard to Birch's securities law claims. (Tr. at 155–60.) In the course of the proffer the court confirmed with counsel that he had covered all of Birch's then active theories of liability. (Tr. at 148–49.) Immediately thereafter, and again without objection, the court ruled on Birch's claims, explaining the legal and factual infirmities of all the alternatives Birch's counsel had postulated. (Tr. at 160–168.) [6]

■ Such procedures, undertaken by the trial court judge to assure his own understanding of the case and to enhance trial efficiency, do not amount to reversible error in a case such as this. *See* Fed.R.Civ.P. 61; Fed.R.Evid. 611(a) (providing for court control over the mode and order of evidence towards achieving an effective, efficient, and witness-friendly trial); *see also, e.g., Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984) (emphasizing the court's "inherent authority to manage the course of trials"); *Nickerson v. G.D. Searle & Co.,* 900 F.2d 412, 419 (1st Cir.1990) (describing court's refusal to allow further redirect as "well within the discretion" of Rule 611(a)); *Spacco v. Bridgewater School Dept.,* 739 F.Supp. 30, 33 (D.Mass.1990) (exercising Rule 611(a) authority in bifurcating trial to hear mootness, justiciability arguments first); *compare Secretary of Labor v. DeSisto,* 929 F.2d 789, 795–96 (1st Cir.1991) (finding, reluctantly, an abuse of discretion in limiting witnesses to one per party, while emphasizing a "pronounced preference" to give a trial court leeway in its "effort to control its own docket," by "eliminat[ing] needless time-wasting" in "this era of crowded dockets").

■ In any event, Birch's failure to object deprived the trial judge of the opportunity to consider whether the proceedings operated unfairly upon him. Birch "may not appeal from an error to which he contributed to by failing to object." *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 248 (1st Cir.1985). *See also Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 531 (1st Cir.1993) ("To raise an issue on appeal, a litigant must generally show the issue was raised in the trial court by a proper request or objection and that the right ground for the request or objection was given at the time.").[7]

### 3. Substantive Rulings.

Birch asserts several substantive errors. None of the assertions holds water.

#### a. The Mayfair Claim.

First, relying principally on *Albert Richards Co. v. Mayfair, Inc.,* 287 Mass. 280, 191 N.E. 430 (1934), Birch asserts that the Choinskis are personally liable to him because, as officers, directors, or controlling persons of an insolvent corporation, they could not "loan" funds to the corporation at the expense of its creditors. Birch urges that, under the facts as found by the bankruptcy judge and supplemented by his offer of proof, the Choinskis were *precluded* from *lending* operating funds to their financially troubled corporation because repayment of those loans (even on a fair and equitable basis) reduced funds available to pay arms-length creditors.

■ We do not agree for two reasons. First, although Birch expressly invoked the so-called *Mayfair* claim in his second amended proof of claim, he abandoned it at trial. Second, Birch possesses no meritorious *Mayfair* claim in his own right.

---

**6.** The court conducted the trial on the Epicor trustee's fraudulent transfer claim and Birch's claims in two phases. In its decision on Birch's claim the court drew upon the evidence in the first phase, (*see e.g.,* Tr. at 162), the opening statements and offer of proof provided by Birch's counsel in the second phase, (*see e.g.,* Tr. at 131–155, 157–60), consideration of the documents in evidence, (*see e.g.,* Tr. at 137–40, 161, 163), and a review of the applicable law. (*see e.g.,* Tr. at 134–37, 146–50, 153, 155–56, 160–66).

**7.** We cannot pass this point without commenting on the fundamental unreasonableness of appellant's assertion that a trial court cannot permissibly insist that, on the very day of a straightforward one-day trial, trial counsel be prepared to explain on the record the theories he or she plans to pursue and the evidence to be adduced in support of those theories.

To ready disputed issues for trial, the bankruptcy judge required Birch to file a bill of particulars, detailing the bases on which he asserted the Choinskis' personal liability for Epicor's debts. That submission, filed five days before trial, described the nature of claims Birch had assigned to the trustee and those upon which he planned personally to proceed:

> Birch possess ... claims directly against the debtors as a result of their wrongful conduct as participants in securities violations and as directors and officers of the corporation. The claims are stated with supporting statements and exhibits in the Proof of Claim as amended previously filed and served by Birch. This pre-trial bill of particulars identifies those claims which were assigned to the trustee, specifies certain grounds for holding the Choinskis personally liable for the liabilities of their corporation, and sets out additional statutory citations for their personal liability to Birch.

> Birch's previously stated claims have been allocated as follows.

> *First.* Epicor judgment debt to Birch—Birch's vs. Choinskis (G.L.M. c. 158 §§ 44, 46 or § 45).

> Fraudulent conveyance—Trustee's vs. Choinskis.

> Epicor note to Birch—Birch's vs. Choinskis (indorsement of note by both Choinskis) (G.L.M. c. 106 §§ 401–403).

> *Second.* Blue-sky vs. Choinskis—Birch's (without prejudice to similar claims Trustee may have vs. Choinskis).

> *Third.* Fiduciary duty and statutory duty of directors and officers to corporations—Trustee's vs. Choinskis (G.L.M. c. 156B § 61).

> *Fourth.* Chapter 93A—Birch's vs. Choinskis (without prejudice to similar claims Trustee may have vs. Choinskis). (App. at 149–50.)

Of the theories enumerated in the bill, only the very first item of the first category could relate to the *Mayfair* claim. The bill arguably raised the issue, albeit in hazy fashion; the referenced amended proof of claim was explicit on the point. However, after the court had heard the trustee's fraudulent transfer claim and Birch's offer of proof, the judge asked Birch's counsel to elucidate Birch's claims one last time. (Tr. at 134.) At that point the haze lifted entirely. Counsel explained that the facts demonstrated three bases for the Choinskis' personal liability: first, the form of signature on Epicor's note to Birch rendered Mr. Choinski personally liable on the debt;[8] second, Epicor's stock option was a "security" and its issuance without affirmative disclosure of the corporation's precarious financial circumstances rendered the Choinskis liable for damages under the Massachusetts Blue Sky law; and, third, the Blue Sky violation amounted to a *per se* violation of Mass. Gen. Laws ch. 93A (West 1997 & Supp.1997), the Massachusetts Unfair Trade Practices Act. (Tr. at 134–55.) Thus, although Birch now complains that the bankruptcy judge's ruling disallowing his claim paid no heed to his *Mayfair* argument, he plainly did not press that argument at trial. Moreover, when the court explained its reasons for disallowing Birch's claim without expressly addressing the *Mayfair* argument, counsel stood mute. The trial court cannot be faulted for failing to address (or wrongly resolving) an argument not advanced at trial. *See Garden Way, Inc.,* 989 F.2d at 531; *Chris Craft Corp.,* 770 F.2d at 248; *see also* discussion *supra* Part 2.

■ Even had Birch effectively invoked Massachusetts corporate veil-piercing principles generally, and *Mayfair* specifically,[9] its

8. Although the court ruled against Birch on this point, too, he has not pressed the argument on appeal. (Appellant's Brief at 5–9) (listing issues presented on appeal). *See infra* note 15.

9. Although *Mayfair* is, technically, of a different genus, *see* discussion *infra,* it has often been treated as part of Massachusetts's well-developed body of law on corporate veil-piercing. *See Maury Kusinitz Ins. Agency, Inc. v. Medical De-*vices of Fall River, Inc., 7 Mass. L. Rptr. 205, ——, 1997 WL 426970, at *4–*5 (Mass.Super., Jul. 23, 1997) (trial court cites *Mayfair* in summarizing general principles relevant to veil-piercing); *see also Evans v. Multicon Constr. Corp.,* 30 Mass.App.Ct. 728, 574 N.E.2d 395, 398 (1991) (enumerating factors involved in veil-piercing determination); *My Bread Baking Co. v. Cumberland Farms, Inc.,* 353 Mass. 614, 233 N.E.2d 748, 751–52 (1968) (collecting Massachusetts cases on

invocation would have been of no avail. In *Mayfair*, one Sherman contrived to control a closely-held corporation, the business of which "required expenditures of well over $75,000.00" on a "stock investment of $100 by himself and possibly $5,000 or $6,000 by another," while arranging to place himself as a creditor holding a promissory note secured by a mortgage on substantially all the corporation's assets. *Mayfair*, 191 N.E. at 433–34. When Sherman foreclosed upon and sold the corporation's assets, a creditor successfully sued to have the mortgage avoided and the sale set aside. The Massachusetts Supreme Judicial Court affirmed, concluding that Sherman could not prevail against the corporation's creditors whether he had advanced funds to the company as a true creditor or as an investor. It summarized its holding as follows:

> If the evidence established a loan to the corporation, Sherman could not as against creditors of the corporation enforce the mortgage, because it confessedly was given with actual intent to hinder, delay and defraud creditors of the corporation. If the evidence established a loan and mortgage without actual intent to defraud creditors of the corporation, the corporation could not secure Sherman, its president and one of its board of directors, in preference to other creditors.... If the evidence established not a loan to the corporation but a capital contribution, Sherman was not a creditor of the corporation and the mortgage given to secure his interest was void. In any view of the evidence the mortgage was void as against creditors of the corporation.

*Id.* 191 N.E. at 434–35 (citations omitted).

Thus, *Mayfair* was an action brought by a creditor to avoid a corporate transfer, not an action to establish personal liability of a corporate principal on a corporate obligation. Epicor's trustee, not Birch, was the party with standing to pursue similar claims on behalf of Epicor's estate. *See* (App. at 142.) (Birch's assignment of claims to trustee);

§§ 544, 548; Mass. Gen. Laws ch. 109A, § 8 (West 1990 & Supp.1997); *see also Kowal v. Malkemus (In re Thompson )*, 965 F.2d 1136, 1147–48 (1st Cir.1992) (absent default of fiduciary function, trustee alone has standing to pursue causes of action belonging to estate); *see generally In re Consolidated Auto Recyclers, Inc.*, 123 B.R. 130, 140 (Bankr.D.Me. 1991) ("So long as a trustee conducts the affairs of the estate by exercising his business judgment in good faith, upon a reasonable basis, and within the scope of his authority under the Code, he may proceed without interference."). Any *Mayfair* claim that might have been made was the estate's, not Birch's, to pursue.

Moreover, at the time it disallowed Birch's claim, the bankruptcy court had already found that the Choinskis' loans to Epicor were "true loans" and that they were made in good faith, without intention to delay, hinder, or defraud Epicor's creditors. (Tr. at 128–30.) Birch's offer of proof did not assert that Choinski caused the corporation unfairly to prefer himself over other creditors, as Sherman had done in *Mayfair* by obtaining a pledge of all corporate assets to secure his "loans." Even had Birch effectively preserved the point, his *Mayfair* argument could not help him.

### b. The Blue Sky Claim.

Birch next contends that the bankruptcy court erred in rejecting his Massachusetts "Blue Sky" law claims.[10] The court concluded that neither Epicor's stock option nor the note Epicor subsequently issued to Birch were "securities" within the meaning of the Uniform Securities Act. (Tr. at 164–65.) The court also determined that, assuming the instruments in question to be securities, the evidence it had heard, even when taken together with Birch's offer of proof, was legally insufficient to demonstrate that the Choinskis had misled him through material nondisclosures in connection with option and the note. (Tr. at 165–67.)[11] Because Birch's

---

the countervailing doctrines of shareholder non-liability and veil-piercing).

**10.** Massachusetts' version of the Uniform Securities Act appears at Mass. Gen. Laws ch. 110A, § 101 *et seq.* (West 1990 & Supp.1997).

**11.** Chapter 110A, sections 410(a)(1) and (2) pro-

claim under Massachusetts' unfair trade practices statute was wholly derivative of his securities act claims, the judge rejected it, as well. (Tr. at 167.) [12]

■ That Epicor's note to Birch was not a security is beyond dispute. The Massachusetts Blue Sky laws are "substantially similar to the federal securities laws and therefore decisions construing the federal statutory language are applicable to the state statute as well." *Adams v. Hyannis Harborview, Inc.*, 838 F.Supp. 676, 684 n. 9 (D.Mass.1993) (citing *Quincy Co-Op Bank v. A.G. Edwards & Sons, Inc.*, 655 F.Supp. 78, 87 (D.Mass. 1986), citing *Valley Stream Teachers Federal Credit Union v. Commissioner of Banks*, 376 Mass. 845, 384 N.E.2d 200, 208 (1978)); *see also Sampson v. Invest America, Inc.*, 754 F.Supp. 928, 932 n. 13 (D.Mass.1990); *Gohler v. Wood*, 919 P.2d 561, 566 (Utah 1996) (collecting cases from multiple state and federal courts interpreting state statutes modeled after the Uniform Securities Act in accordance with the federal regulation). Thus, the trial court correctly concluded that, under *Reves v. Ernst & Young*, 494 U.S. 56, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990), Epicor's note to Birch was not a security because it "simply formalize[d] an open account debt incurred in the ordinary course of business." *Id.* at 65, 110 S.Ct. at 951 (quoting *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1137 (2d Cir.1976)).

■ The bankruptcy court's conclusion that Epicor's stock option was not a security is suspect.[13] The Blue Sky law expressly includes a "right to . . . purchase" stock within the definition of "security." Ch. 110A, § 401(k). But this point is not critical to our decision.

■ To prevail on a Massachusetts securities law claim, the plaintiff must demonstrate that a "sale" of the security was effected through a material misstatement or omission and that the defendant was (at least) negligent with respect to the misstatement or omission. *Hyannis Harborview, Inc.*, 838 F.Supp. at 686. The plaintiff may prevail only if he or she "did not know, and in the exercise of reasonable care could not have known, of the untruth or omission." Ch. 110A, § 410(a)(2). *See Jackvony v. RIHT Financial Corp.*, 873 F.2d 411, 416 (1st Cir.1989) (finding plaintiff's reliance unreasonable given the contradictions of pre-agreement statements by representations is later agreements and the prospectus); *Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798, 804–05 (1st Cir.1987) (finding failure of plaintiff's section 10(b)–5 claim because of the lack of justifiable reliance, citing plaintiffs' sophistication as attorneys, the absence of a relationship of trust, and plaintiffs' awareness of the suspect nature of the defendant's financial operations); *Zobrist v. Coal–X, Inc.*, 708 F.2d 1511, 1516–17 (10th Cir.1983) (outlining eight factors to consider when determining if a section 10(b)–5 plaintiff's reliance is justifiable, noting plaintiff cannot intentionally close his eyes, refuse to investigate, and disregard risk); *B.S. International Ltd. v. Licht*, 696 F.Supp. 813, 827 (D.R.I.1988) ("[A] purchaser may not assert as a [liability] basis an inaccurate statement which he knows is not correct.").

Birch asserted that Edward Choinski misled him in connection with the stock option

---

vide that a seller, as well as a person in control of a seller, who sells a security "by means of any untrue statement" of "material fact" or "any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading" is liable to a buyer who does not know of "the untruth or omission." § 410(a)(2). Upon tender of the security, the buyer is entitled to receive the consideration paid for the security, plus interest, costs and attorneys' fees, less income received on the security. *Id.* If the buyer no longer owns the security, he or she may obtain a similar award, with adjustments. *Id.*

**12.** The Massachusetts "little F.T.C. act" is codified at Mass. Gen. Laws ch. 93A *et seq.(west* 1997 & Supp.1997). Birch's premise below was that *any* violation of the state's securities laws leading to liability under chapter 110A, sections 410(a)(2) and (3) constitutes a *per se* violation of chapter 93A with attendant, additional civil liability. (Tr. at 146–49.) Because we affirm the trial court's rejection of Birch's securities law claim, we need not examine that proposition.

**13.** The trial court's decision on the point is not express, but in rejecting Birch's securities laws claims, he did conclude that Birch obtained nothing constituting a security from Epicor and the Choinskis. (Tr. at 164–65.)

by failing to disclose material facts regarding Epicor's shaky financial condition. (Tr. at 157–58.) The court concluded, however, that in light of uncontroverted evidence of Birch's multi-year, direct dealings with Epicor and Mr. Choinski, Birch "must have known" about Epicor's finances, thereby defeating his right to recover on account of Choinski's asserted failure affirmatively to disclose the corporation's perilous financial condition. (Tr. at 166–67.) *See Josephthal & Co.*, 814 F.2d at 804–05 (finding on parallel facts that plaintiff's section 10(b)–5 claim failed).

We agree. Particularly when Birch's close working relationship with the corporation is viewed in concert with the corporation's spotty payment history of Birch's own bills, the court's conclusion that, even if Birch were to testify exactly as counsel suggested he would, Birch could not recover against either or both Choinskis on a securities fraud theory was not clearly errorneous. *See In re Winthrop Old Farm Nurseries, Inc.*, 50 F.3d at 73.[14]

#### c. Summing Up.

We are at the end of the line. Although Birch raises other points, some, such as a reference to corporate officers' liability for corporate debts and contracts pursuant to Mass. Gen. Laws ch. 158, § 44 (West 1992), are but perfunctorily developed. These we considered waived.[15] Others relate only to the un-appealed disposition of Epicor's trustee's claims, such as the question of corporate ratification of payments made on the Choinski loans. Birch is not the one to bring such issues before us. *See In re Thompson*, 965 F.2d at 1147–48.

---

**14.** A point that went unaddressed below adds support to our conclusion that Birch's Blue Sky claim was properly rejected. We see no basis on which Birch could demonstrate entitlement to damages resulting from the stock option transaction. He paid nothing for the option. He never exercised it. And to the extent his one-year stand-still agreement constituted consideration for the option, he recouped the time value on his claim when the claim was written up as Epicor's promissory note after the one-year period expired.

#### Conclusion.

For the reasons set forth above, the bankruptcy court's disallowance of Birch's claims against the Choinskis is AFFIRMED.

---

**15.** On appeal "issues adverted to in a perfunctory manner," such as here, "unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990). *See also Willhauck v. Halpin*, 953 F.2d 689, 700 (1st Cir.1991) (quoting *Zannino* with approval, finding waiver of multiple issues on appeal); *Ramos v. Roche Prod., Inc.*, 936 F.2d 43, 51 (1st Cir.1991) (finding waiver of issues listed in appellant's "Restatement of the Issues" but thereafter undeveloped). The court need not put flesh on the frail, flesh-bare bone of Birch's argument. *See Zannino*, 895 F.2d at 17.