In re Natale J. SERGI, Individually and d/b/a Serboco Realty Trust and d/b/a Sergi Development Company, Debtor.

Natale J. Sergi, Individually and d/b/a Serboco Realty Trust and d/b/a Sergi Development Company, Plaintiff/Appellant,

v.

Everett Savings Bank,
Defendant/Appellee.

BAP Nos. MW 98–037, MW 98–045.

United States Bankruptcy Appellate Panel of the First Circuit.

May 11, 1999.

Jeffrey D. Sternklar, Marian B. Hand and Duane, Morris & Heckscher LLP on brief for the appellant.

H. Bissell Carey, III and Robinson & Cole on brief for the appellee.

Before GOODMAN, LAMOUTTE and CARLO, U.S. Bankruptcy Judges.

## Background

GOODMAN, Bankruptcy Judge.

This case arises in the Debtor's[1] second chapter 11 filing[2] in three years. In the

---

1. The Debtor is Natale J. Sergi, individually and d/b/a Serboco Realty Trust and Sergi Development Company (herein the "Debtor").

2. The Debtor filed Case No. 92–16431–JNF on June 24, 1992. On August 17, 1995, the

Debtor filed a second chapter 11, Case No. 95–43671–JFQ. Judge Feeney presided over Sergi's 1992 case and Judge Queenan is presiding over the 1995 case.

first case filed in 1992, Everett Savings Bank (herein "Everett" or the "Bank") held valid, first priority mortgages on two parcels of the Debtor's property known as Park Street and Westford Street.[3] The parties resolved Everett's claim in the 1992 case by entering into a stipulation that was incorporated into the confirmed plan, and the Park Street Mortgage and the Westford Street Mortgage were never discharged.

In the second case, filed in 1995, the Debtor filed the within adversary proceeding to contest the validity of Everett's Park Street Mortgage and Westford Street Mortgage. Everett cross-claimed, seeking a declaratory judgment that it was secured. The parties each filed motions for summary judgment. The bankruptcy court granted Everett's motion for summary judgment on its cross-claim, denied the Debtor's motion, dismissed the Debtor's complaint, and denied the Debtor's motion to strike certain evidence as moot.

In granting Everett's motion for summary judgment, the bankruptcy court concluded that the stipulation incorporated into the 1992 amended confirmed plan was unambiguous and provided that the Park Street Reorganization Note and the Westford Street Reorganization Note were secured by the Park Street Mortgage and the Westford Street Mortgage retained by Everett pursuant to the express language of the stipulation. For the reasons set forth below, we affirm.

### Standard of Review

The Bankruptcy Appellate Panel reviews *de novo* the bankruptcy court's legal conclusion to grant summary judgment on Everett's motion. *FDIC v. Ins. Co. of N. Am.*, 105 F.3d 778, 779 (1st Cir.1997); *see*

Concrete Equip. Co. v. Fox (In re Vigil Bros. Constr., Inc.), 193 B.R. 513, 516 (9th Cir. BAP 1996) (Bankruptcy Appellate Panel reviews trial court's legal conclusion *de novo*); *Citibank (South Dakota) N.A. v. Lee (In re Lee)*, 186 B.R. 695, 697 (9th Cir. BAP 1995) (same).

### Undisputed Facts

On or about July 8, 1988, the debtor executed and delivered to Everett a promissory note in the original principal amount of $2,000,000 (the "1988 Park Street Note"). He also executed and delivered on the same date a Mortgage on the Park Street Property ("Park Street Mortgage") and a Conditional Assignment of Rents relating to rents generated by that property.[4] On or about March 6, 1990, the Debtor executed and delivered to Everett a promissory note in the original principal amount of $1,500,000 (the "1990 Westford Street Note"). On the same date, the Debtor executed a Mortgage on the Westford Street Property ("Westford Street Mortgage") and a Conditional Assignment of Rents relating to rents generated by that property.[5] Nine months after the amendments, the Debtor filed his first chapter 11, the 1992 case and Everett timely filed a Notice of Election Pursuant to § 1111(b)(2). On August 2, 1993, the Debtor filed his Second Amended Plan of Reorganization dated June 11, 1993 (the "Modified Plan"). The Modified Plan, among other things, specifically recognized the § 1111(b)(2) election by Everett and specified that Everett's mortgages were valid and properly perfected and that it would retain liens on the Westford Street Property and the Park Street Property to secure the full amount of its allowed claims. Thereafter, the parties negotiated

---

3. These mortgages are referred to herein as the Park Street Mortgage and the Westford Street Mortgage.

4. The 1988 Park Street Note was amended by the parties thereto by letter dated September 26, 1991 resulting in a reduction in the applicable interest rate and converting it to a demand note.

5. Just as done with the Park Street Note, the Westford Street Note was amended by the parties by letter dated September 26, 1991 to reduce the applicable interest rate and convert it to a demand note.

resolution of the treatment of Everett's claim, and by the time of the final hearing on confirmation, the signed stipulation was filed and approved by the bankruptcy court. The Modified Plan, as amended by the stipulation, was confirmed on September 30, 1993. Thereafter, pursuant to the Modified Plan and stipulation, the Debtor executed the Westford Street Reorganization Note and the Park Street Reorganization Note. Although the reorganization notes refer to reorganization mortgages, the confirmed plan and incorporated stipulation did not propose or require new mortgages, and none were executed. The old mortgages still remain of record and have not been discharged.

The Debtor argues that Everett is now unsecured because Everett failed to take steps to obtain and record new mortgages to secure the reorganization notes.

### Discussion

■ The 1992 confirmed plan of reorganization is a binding contract between the Debtor and Everett, *In re Sugarhouse Realty, Inc.,* 192 B.R. 355, 362 (E.D.Pa. 1996), and is subject to interpretation pursuant to relevant rules of contract interpretation and construction. The First Circuit has summarized the standard under Massachusetts law as follows:

"[u]nder Massachusetts law, interpretation of a contract is ordinarily a question of law for the court," *Coll v. PB Diagnostic Systems, Inc.,* 50 F.3d 1115, 1122 (1st Cir.1995) (internal quotation marks and citations omitted) and, as a question of law, is subject to plenary review. "Should the court find the contract language unambiguous, we interpret it according to its plain terms." *Den Norske Bank,* 75 F.3d at 52. If those plain terms unambiguously favor either side, summary judgment is appropriate. On the other hand, if the contract's terms are ambiguous, "contract meaning normally becomes a matter for the factfinder," *id.,* and summary judgment is appropriate only if the "extrinsic evidence presented about

the parties' intended meaning is so one-sided that no reasonable person could decide to the contrary." *Id.* at 53 (citations, internal quotation marks and alterations omitted). . . .
The question of whether an ambiguity exists in such an agreement is also "generally a matter of law for the court." *Wyner v. North Am. Specialty Ins. Co.,* 78 F.3d 752, 754 (1st Cir.1996).

*Bank v. International Business Machines, Corp.,* 145 F.3d 420, 424–425 (1st Cir.1998). If a contract is not ambiguous, the court need not look beyond the four corners of the document to determine the parties' intent. Ambiguity is not created simply because a controversy exists between the parties each favoring an interpretation contrary to the other's. A contract is only ambiguous "where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and the obligations undertaken." *Bank v. International Business Machines, Corp.,* 145 F.3d at 424, citing to *Coll,* 50 F.3d at 1122.

■ To determine if there is any ambiguity, the court must first identify which documents are the operative documents. Although the bankruptcy court labeled an entire list of documents as "operative", May 12, 1998 Hearing Transcript at p. 39, a careful reading of the decision confirms that the bankruptcy court cited and relied only on the plan and stipulation to determine the parties' intention with regard to Everett's security interest. The Debtor argues that the bankruptcy court improperly ignored language contained in the reorganization notes that refers to reorganization mortgages. We reject the Debtor's argument. The confirmed plan in the 1992 case provides that "to the extent the terms of the Plan are inconsistent with the terms of any agreement or instrument concerning any claim or any other matter, the terms of the plan shall control." Second Amended Plan of Reorganization as Modified at ¶ 14.1. The reorganization notes, by

reference to reorganization mortgages, are the only documents that are inconsistent with the plan and stipulation, thus the bankruptcy court properly excluded the reference to reorganization mortgages and relied only on the plan and stipulation to determine the nature, extent and priority of Everett's liens. The amended plan and stipulation are not ambiguous, and the bankruptcy court was not required to look beyond the four corners of those documents to determine the intent of the parties.

With regard to the Westford Street property, the plain language of the stipulation states that "Everett Savings shall **retain a lien on the property to secure the full amount of its allowed claim.**" (emphasis added). The stipulation provides for the execution of reorganization notes, but makes no reference to reorganization mortgages. As for the Park Street property, the stipulation again provides that Everett shall "**retain a lien on the property to secure the full amount of its allowed claim.**" (emphasis added). The stipulation once again provides for the execution of reorganization notes, but contains no reference to or requirement for new mortgages. No new mortgages have ever been tendered by the Debtor to the Bank. The bankruptcy court concluded that there was only one reasonable interpretation:

> The stipulation, I believe any reasonable reader not pointed to a particular conclusion, amends the notes and states that the new notes to be executed will continue to be secured by the existing mortgage. The stipulation says in each case the bank retains its lien as security for the claim, and then it goes on to spell out the notes to be executed, total precisely in face amount what that claim is, [sic] which was to be continued to be secured. The stipulation expressly sets forth that new notes will be executed. It says nothing about a new mortgage or new mortgages being executed. I think it is clear from the stipulation that no

new mortgages were to be executed or recorded.

May 12, 1998 Hearing Transcript at p. 40.

The parties intended "the [reorganization] notes to be secured by the existing mortgages and the stipulation amends those existing mortgages in effect by so stating that." Hearing Transcript dated May 12, 1998 at p. 41. We agree with the bankruptcy court. The terms of the 1992 confirmed plan and stipulation are unambiguous.

The Debtor does not seriously dispute the fact that the parties intended that Everett would retain a security interest in the Park Street Property and the Westford Street Property. Instead, the Debtor argues that Everett failed to take necessary technical steps to perfect its alleged security interests by recording new or reorganization mortgages. We reject this argument. It is contrary to the plain meaning of the governing documents, the confirmed plan and incorporated stipulation. Even if the argument had merit, the plain language of the stipulation states that Everett would retain its liens, and Everett would retain those liens until new mortgages were executed and recorded.

■ The Debtor also argues that the bankruptcy court impermissibly relied on parol evidence, and the Debtor moved to strike certain evidence at the time of the hearing on the motions for summary judgment. The bankruptcy court considered extrinsic evidence for the limited purpose of determining that the terms of the confirmed plan and stipulation were not ambiguous. *Donoghue v. IBC/USA (Publications), Inc.*, 70 F.3d 206, 215 (1st Cir.1995) (court entitled to consider limited extrinsic evidence for the purpose of determining whether any ambiguity existed). However, there is no evidence that the bankruptcy court based its interpretation of the confirmed plan and stipulation on anything other than the plain language of those documents. For that reason, we affirm the bankruptcy court's decision that de-

clared the Debtor's motion to strike as moot.

 When the bankruptcy court granted Everett's motion for summary judgment on its counterclaim against the Debtor, the bankruptcy court denied the Debtor's motion for partial summary judgment on his complaint and dismissed the same. The Debtor identified the denial of his motion for partial summary judgment and the dismissal of his complaint in his statement of issues on appeal. However, the Debtor has not addressed these issues in his brief or cited any legal authority to support his position. All issues arising from the denial of the Debtor's motion for partial summary judgment and the dismissal of his complaint are considered waived. *In re Choinski*, 214 B.R. 515, 524, n. 15 (1st Cir. BAP 1997) ("On appeal, 'issues averted to in a perfunctory manner,' such as here, 'unaccompanied by some effort at developed argumentation, are deemed waived.'") (citation omitted).

### Conclusion

For the reasons set forth, the decision of the bankruptcy court granting summary judgment is affirmed. The bankruptcy court did not improperly consider parol evidence in granting summary judgment, and the determination that the motion to strike was moot is affirmed. Both the denial of the Debtor's motion for summary judgment and dismissal of his complaint are affirmed.