10-4228-pr
Nickels v. Conway

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED
BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1 .
WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY
OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the
Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York,
on the 8th day of May, two thousand twelve,

Present:     JOHN M. WALKER, JR.,
             CHESTER J. STRAUB,
             ROSEMARY S. POOLER,
                     *Circuit Judges*.

_____

TOBIAS NICKELS,

                     *Petitioner-Appellant*,

             -v-                                                10-4228-pr

JAMES CONWAY,

                     *Respondent-Appellee*.

_____

Appearing for Appellant:     Marjorie M. Smith, Piermont, N.Y.

Appearing for Appellee:      Jodi A. Danzig, Ashlyn Dannelly, Assistant Attorney Generals, of
                             counsel; Barbara Underwood, Solicitor General, *for* Eric T.
                             Schneiderman, Attorney General of the State of New York, New
                             York, N.Y.

Appeal from the United States District Court for the Western District of New York
(Larimer, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **VACATED and REMANDED**.

Petitioner Tobias Nickels filed a petition for relief under the All Writs Act, 28 U.S.C. § 1651. The district court construed his application as a petition for habeas corpus, pursuant to 28 U.S.C. § 2254, which absent equitable tolling would have been untimely. The district court found that, even assuming Nickels had demonstrated that he faced an extraordinary circumstance, he failed to demonstrate due diligence. Accordingly, the district court dismissed his petition as untimely. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth the standard for timely filing of a habeas claim. As relevant here, a petitioner must file within one year of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1). The Supreme Court has held that this limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 2562 (internal quotation marks omitted). Nickels's petition was filed on April 14, 2010. Absent equitable tolling, his time to file expired August 6, 2008.

Nickels argues that the negligence of his representation, Pro Se Litigators ("PSL"), constituted an extraordinary circumstance warranting equitable tolling. The district court assumed, but did not decide that this negligence constituted an extraordinary circumstance. While "attorney error *normally* will not constitute the extraordinary circumstances required to toll the AEDPA limitations period . . . at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003). In *Baldayaque,* we found attorney negligence constituted an extraordinary circumstance where the lawyer failed to file the habeas petition, despite being specifically requested to do so ("By refusing to do what was requested by his client on such a fundamental matter, Weinstein violated a basic duty of an attorney to his client."); did no legal research on the case, thus violating the duty of competence; and "failed to keep [his] client reasonably informed about the status of [the case] and failed to explain [the] matter to the extent reasonably necessary to permit [Baldayaque] to make informed decisions regarding the representation." *Id.* (internal quotation marks omitted, alterations in original).

Such failures are apparent here. PSL failed to file the habeas petition, despite its repeated promises, and apparent direction from Nickels, to do so. *See Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (indicating "an attorney's failure to file a habeas petition on behalf of a prisoner, despite explicit directions from the prisoner to do so" is a circumstance justifying equitable tolling). PSL also failed the basic duty of competence. The letter of May 5, 2008,

2

indicated to Nickels that "[a]lthough timeliness is a serious factor we must work within the main thing at this point is that we leave no stone uncovered. Essentially it is quality over speed." Such a representation about the importance of Section 2254's statute of limitations is both wrong and highly prejudicial to habeas petitioners. Moreover, on September 26, 2008, more than a month past the deadline to file, PSL was still advising Nickels to "relax and be patient." This is a failure of both competence and diligence. *See* New York Rules of Professional Conduct 1.1(a) ("Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."), 1.3(b) ("A lawyer shall not neglect a legal matter entrusted to the lawyer."). PSL failed further in its duties to communicate with Nickels. Though there is a long series of letters in the record, none of these letters gave Nickels the information necessary to make informed decisions about his representation. *See* New York Rules of Professional Conduct 1.4(b) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."). Nickels could not make informed decisions about his representation because PSL did not apprise him of the true state of his petition or of the law surrounding it.

Finally there is the question of abandonment. In *Holland,* the court indicated that "fundamental canons of professional responsibility . . . require attorneys to perform reasonably competent legal work, to communicate with their clients, to implement clients' reasonable requests, to keep their clients informed of key developments in their cases, and *never to abandon a client*." 130 S.Ct. at 2564 (emphasis added). PSL obviously failed in this basic duty. Nickels was constantly apprised that his petition was almost done, that timeliness was not crucial, and that the papers he had turned over to his lawyers, and could not get back, were necessary to filing— only to find himself with no petition, no lawyer, and no recourse. This is abandonment of client, and it, in conjunction with the other circumstances presented, constitutes an extraordinary circumstance.

But extraordinary circumstances themselves are not enough to entitle a petitioner to equitable tolling: "a petitioner is entitled to equitable tolling only if he shows . . . that he has been pursuing his rights diligently . . . " *Id.* at 2562 (internal quotation marks omitted). "The standard is not 'extreme diligence' or 'exceptional diligence,' it is *reasonable* diligence . . . . [T]he district court should ask: did the petitioner act as diligently as reasonably could have been expected *under the circumstances*?" *Baldayaque*, 338 F.3d at 153. District courts may consider:

> (1) [petitioner's] efforts at the earliest possible time to secure counsel for the purpose of filing a habeas petition; (2) [petitioner's] lack of funds to consult another lawyer; . . . .(4) [counsel]'s failure to communicate directly with [petitioner] *at any time*; (5) [petitioner's] lack of education and inability to speak or write English; and (6) [petitioner's] incarceration and attendant lack of direct access to other forms of legal assistance.

*Id.*

The district court determined that Nickels was not diligent, and so was not entitled to equitable tolling, but it did not fully consider all of the circumstances created by PSL's negligent representation. Looking first to the period before PSL was hired, the district court appears to

3

have considered the fact that it took "nearly five months" for Nickels to hire PSL after his conviction became final as evidence relevant to equitable tolling. But Nickels did not claim that the extraordinary circumstance had begun before he hired PSL, only after, and so his diligence during this period is not relevant.[1]

The district court determined that Nickels was not diligent after he had hired PSL, because he "had been given ample reason to suspect that something was amiss with Pro Se Litigators' representation of him well prior to the filing deadline for the § 2254 petition." Such a determination was error for two reasons. First, to the extent the district court's opinion suggests that Nickels should have taken earlier measures to ensure the timeliness of his petition, we wrote in *Valverde v. Stinson* that "[a] petitioner should not be faulted . . . for failing to file early or to take other extraordinary precautions early in the limitations period against what are, by definition, rare and exceptional circumstances that occur later in that period." 224 F.3d 129, 136 (2d Cir. 2000). Nickels was not required to take extraordinary precautions "well prior" to the filing deadline, when PSL consistently reassured him both that the petition would be timely, and moreover, that it did not have to be.

Second, the district court failed to consider what impact those representations as to the importance of timely filing might have on what diligence is due. Nickels was apprised by PSL that timeliness was not the "main thing," and even after the deadline to file had passed, PSL still directed him to "relax and be patient." Any inquiry into diligence must take into account the effect these assurances would have on a person in Nickels's position. The district court erred in failing to do so.

The next period of time to be considered is the period after Nickels learned of PSL's abandonment of him. Nickels argues that PSL's failure to "return his transcripts prevented him from preparing and filing his habeas corpus petition." The district court found that Nickels was not diligent during this time because he could have "filed a 'bare bones' petition and sought to amend it later." However, the district court erred in not considering what diligence was due from a person in Nickels's circumstance— that is, a petitioner who was told by his counsel that the record was necessary for the completion of the petition. A duly diligent petitioner in this circumstance might reasonably think that such papers were necessary to filing, and thus devote his time to getting them back rather than preparing a new petition.

---

[1] Even if Nickels had claimed the extraordinary circumstance had already begun, for the purpose of diligence, we have directed district courts to consider "[petitioner's] *efforts* at the earliest possible time to secure counsel for the purpose of filing a habeas petition," *Baldayaque*, 338 F.3d at 153 (emphasis added). That Nickels did not obtain counsel for five months does not mean he was not diligent. His habeas petition indicates that during the time between his conviction and his hiring of PSL, he wrote "several letters to a great number of attorney[s]," a fact which the district court did not appear to consider. We also note that five months to find and retain an attorney may also not be indicative of a lack of diligence for an incarcerated, indigent petitioner.

Moreover, our case law suggests that a petitioner's legal papers and access to them are not irrelevant to his ability to file. *See Valverde*, 224 F.3d at 133. ("The intentional confiscation of a prisoner's habeas corpus petition and related legal papers by a corrections officer is 'extraordinary' as a matter of law.") In that case we wrote, "a person is plainly 'prevented' from filing a pleading for some period of time if he is deprived of the sole copy of that pleading, something that the petitioner asserts happened to him here." *Id.* at 134. While Nickels was not deprived of his actual habeas petition, he alleges he sent all of his legal materials to PSL, and that those documents were not returned after PSL declared bankruptcy, despite his efforts to obtain them. In light of that, the district court erred in calling Nickels' failure to file upon learning of the bankruptcy a lack of diligence without considering the effect of PSL's repeated admonitions that his papers were necessary to filing.

In addition, the record reflects that Nickels sought the assistance of the Law Library Officer and Personnel Administration at Attica where he was incarcerated. He also filed a complaint with the Attorney General, which was copied to the district court. At a minimum, this suggests Nickels was diligent in trying to figure out how to proceed between the time he learned he would not receive a petition from PSL and the time he ultimately filed. To suggest that a petitioner is not diligent in such circumstances when he does not simply file a bare bones petition does not appropriately take account of the fact that, in large part, habeas petitioners have but one bite at the apple. "[A] petitioner must navigate not-insignificant procedural complexities [in filing a habeas petition]. Mistakes can be costly, given the severe limitations that AEDPA imposes on the filing of second or successive petitions." *Harper v. Ercole*, 648 F.3d 132, 140 (2d Cir. 2011) (internal citation and quotation marks omitted).

Finally, we question the district court's suggestion that Nickels's eventual filing of a "well structured [petition]. . . which raises appropriate actual allegations and points of law," was evidence that he was not diligent in failing to file sooner. The fact that Nickels was *eventually* able to draft a petition without his transcripts does not mean that a duly diligent person would have done so sooner.

Our disagreement with the district court stems from its failure to consider diligence in light of petitioner's unique circumstances, including the effect of PSL's representations both as to timeliness and as to the importance of the record for filing. On remand, the district court should consider all of the circumstances facing Nickels and what diligence would be due from a petitioner facing them. We direct that counsel be appointed to represent Nickels in the district court on remand.

Accordingly, the judgment of the district court hereby is VACATED and REMANDED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk