*Martinez v. Superintendent of Eastern Correctional Facility*

# In the

# United States Court of Appeals

## For the Second Circuit

_____

AUGUST TERM, 2015

ARGUED: AUGUST 26, 2015
DECIDED: NOVEMBER 10, 2015

No. 14-1513

DAVID MARTINEZ,
*Petitioner-Appellant,*

*v.*

SUPERINTENDENT OF EASTERN CORRECTIONAL FACILITY,
*Respondent-Appellee.*[1]

_____

Appeal from the United States District Court
for the Eastern District of New York.
No. 11 Civ. 4330 – Nina Gershon, *Judge.*

_____

Before: WALKER, JACOBS, and LIVINGSTON, *Circuit Judges.*

_____

Petitioner-appellant David Martinez appeals from the decision of the United States District Court for the Eastern District of New

_____

[1] The Clerk of the Court is directed to amend the caption as set forth above.

York (Gershon, *J.*), denying his petition for a writ of habeas corpus.

**[A 1]** Although Martinez seeks to challenge his 2007 New York state conviction for charges including murder in the second degree, he failed to file his petition within the one-year limitations period provided by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(d)(1) (2015) ("AEDPA"). The district court held that Martinez was not entitled to equitable tolling of the statute of limitations because he had not acted with reasonable diligence during the period for which he sought tolling. **[A 10]** We conclude that the court's analysis of Martinez's degree of diligence is premised upon a misapplication of our decision in *Doe v. Menefee*, 391 F.3d 147 (2d Cir. 2004). Accordingly, we VACATE the district court's order dismissing the petition and REMAND the case for further proceedings consistent with this opinion.

————

RANDOLPH Z. VOLKELL, Law Office of Randolph Z. Volkell, Merrick, NY, *for Petitioner-Appellant*.

DONALD J. BERK, Assistant District Attorney, Nassau County (Madeline Singas, District Attorney, Nassau County, Tammy J. Smiley, Assistant District Attorney, *on the brief*), Mineola, NY, *for Respondent-Appellee*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Petitioner-appellant David Martinez appeals from the decision of the United States District Court for the Eastern District of New York (Gershon, *J.*), denying his petition for a writ of habeas corpus. **[A 1]** Although Martinez seeks to challenge his 2007 New York state conviction for charges including murder in the second degree, he failed to file his petition within the one-year limitations period provided by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244(d)(1) (2015) ("AEDPA"). The district court held that Martinez was not entitled to equitable tolling of the statute of limitations because he had not acted with reasonable diligence during the period for which he sought tolling. **[A 10]** We conclude that the court's analysis of Martinez's degree of diligence was premised upon a misapplication of our decision in *Doe v. Menefee*, 391 F.3d 147 (2d Cir. 2004). Accordingly, we VACATE the district court's order dismissing the petition and REMAND the case for further proceedings consistent with this opinion.

## BACKGROUND

On July 20, 2007, David Martinez entered a guilty plea in New York state court to charges including attempted murder, robbery, and assault. **[A 1-2, RB 3]** On February 11, 2008, he was sentenced to twelve years' imprisonment, five years' post-release supervision, and restitution. **[RB 5]** He was then transferred to the custody of the

New York State Department of Corrections and Community Supervision. **[RB 6]** Martinez immediately hired an attorney to seek post-conviction relief, but this attorney evidently showed a greater interest in collecting fee payments than in providing Martinez with adequate representation. The attorney missed the habeas petition deadline and was barely responsive to Martinez's case, as the following facts demonstrate.

On March 3, 2008, three weeks after his sentencing, Martinez and his mother hired attorney Anthony Denaro to handle his post-conviction relief. **[BB 3]** Denaro, Martinez, and Martinez's mother executed an agreement for legal services. **[A 3]** They agreed upon a retainer payment of $5,000, and Martinez's mother paid $2,000 that day. **[RB 6]** Denaro accepted the money and then did virtually nothing for almost a year. Between March 2008 and January 2009, the only communication that Martinez received from Denaro was a November 28, 2008 billing statement. **[BB 3]**

Denaro claims his firm sent Martinez two letters in early 2009, more than ten months after Martinez hired him: a letter from Denaro on January 28, 2009, enclosing all court documents in his possession, and a letter from Denaro's colleague, Jack Evans, on February 12, 2009, requesting a detailed statement of the facts and circumstances in his case. **[A 3, 14]** Denaro also claims he received a letter on March 3, 2009 from Martinez, answering Evans' request. **[BB 3]**

None of these letters are in the record, however, and Martinez claims Denaro sent him "nothing" until March 4, 2009. **[A 3]**

On March 4, 2009, more than a year after Denaro's retention, Evans sent Martinez a letter requesting information to be used in the filing of a *coram nobis* petition. **[A 4]** The letter referenced documents and information previously provided by Martinez. **[A 45]** At no point in this letter did Evans mention that, because Martinez's judgment became final on March 12, 2008, the one-year deadline for filing a petition for habeas corpus would expire in just over a week. **[A 4]** On March 6, 2009, Denaro's firm also sent Martinez a second billing statement. **[BB 3]**

From March to April of 2009, Martinez and Evans discussed the *coram nobis* petition. On March 16, 2009, Martinez responded to Evans. **[A 4]** On April 2, 2009, Evans met with Martinez's mother. **[BB 4]** The following day, the firm sent Martinez a third billing statement. **[BB 4]** On April 6, 2009, Evans sent Martinez a letter describing the possible results of a *coram nobis* petition. **[A 4]** On April 12, 2009, Denaro met with Martinez's mother and advised her that it would be very difficult to formulate a meritorious petition. **[RB 7]** On April 30, 2009, Evans wrote Martinez to tell him that he was leaving Denaro's firm. **[A 4]** That letter referenced "the two most recent letters you sent to me regarding your case." **[A 48]**

After Evans left, Martinez corresponded with Denaro. On June 18, 2009, Martinez wrote to Denaro. **[BB 4]** On June 25, 2009, Denaro wrote back and assured Martinez that he was in the process of "determining whether appeal should be taken to the federal court." **[A 4]** Denaro emphasized his "forty-five years [of] legal experience" and claimed a record of "favorable results." **[A 49]** On October 16, 2009, Martinez wrote again to Denaro. **[BB 4]** On November 13, 2009, nearly five months after his last communication and more than eight months since the passing of the habeas deadline, Denaro responded to "provide [Martinez] with the status of [his] motion to withdraw [his] guilty plea and federal habeas corpus relief." **[A 4-5, 51]** Denaro stated, "Please be assured that we are working very hard to make this happen for you." **[A 51]** On November 25, 2009, Martinez wrote again to Denaro. **[BB 4]** Denaro's next and last communication to Martinez, sent on January 15, 2010, was a fourth billing statement. **[BB 4]**

On August 3, 2010, Martinez filed *pro se* for a writ of error *coram nobis*, challenging multiple aspects of his sentence. **[A 2]** On December 8, 2010, the New York Supreme Court modified the restitution amount but denied all other claims. *People v. Martinez*, Ind. No. 889N-07, Motion No. C-680 (Sup. Ct. Nassau County, Dec. 8, 2010) (Ayres, *J.*). **[A 2, RB 2]** On May 10, 2011, the Appellate Division, Second Department (Lott, *J.*), denied Martinez leave to

appeal the denial. **[A 2, RB 9]** On August 1, 2011, his application for leave to appeal to the New York Court of Appeals was denied. **[A 2]**

On September 27, 2010, while waiting for a decision on his *coram nobis* petition, Martinez complained about Denaro's conduct to the Second Department Grievance Committee, Tenth Judicial District ("Grievance Committee"). **[A 5]** On December 21, 2010 and August 9, 2011, he submitted additional letters to the Grievance Committee. **[A 5]** He also reached out to The Lawyers' Fund for Client Protection but was informed on October 7, 2010 that the organization would be unable to help him. **[A 5]** On November 18, 2011, the Grievance Committee determined that Denaro had breached the Rules of Professional Conduct and admonished him for his failure to timely pursue Martinez's case. **[A 5]**

On August 30, 2011, Martinez filed *pro se* for a writ of habeas corpus in the United States District Court for the Eastern District of New York. **[A 2]** He sought a reduction of his sentence to ten years' imprisonment and either reduction or elimination of post-release supervision. **[A 2-3]** His petition alleged, *inter alia*, ineffective assistance of counsel. **[BB 5, RB 10-11]** The district court (Feuerstein, *J.*) issued an Order to Show Cause, directing Martinez to explain why his petition should not be dismissed as time-barred. **[A 2]**

On April 15, 2014, after reviewing submissions from both parties, the district court dismissed the petition as time-barred. **[A**

**11, RB 11]** The district court concluded that the one-year habeas limitations period began when Martinez's judgment became final on March 12, 2008, and that his petition was therefore time-barred as of March 12, 2009. **[RB 11]** The district court found Martinez ineligible for equitable tolling because, although Denaro's effective abandonment of Martinez constituted an extraordinary circumstance preventing him from timely filing his petition, Martinez had not acted with the required reasonable diligence. **[RB 11, A 10]** On July 31, 2014, we granted a certificate of appealability on the question of whether Martinez was entitled to equitable tolling. **[RB 2-3]**

## DISCUSSION

We review *de novo* a district court's denial of equitable tolling when premised on a finding that "governing legal standards would not permit equitable tolling in the circumstances." *Belot v. Burge*, 490 F.3d 201, 206 (2d Cir. 2007); *see Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011) (per curiam).

The district court dismissed Martinez's petition as untimely under AEDPA. That act places a one-year limitation on a prisoner's right to seek federal review of a state criminal conviction pursuant to 28 U.S.C. § 2254. *Smith v. McGinnis*, 208 F.3d 13, 15 (2d Cir. 2000) (per curiam). The statute of limitations "runs from the latest of a number of triggering events, including the date on which the

judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Rivas v. Fischer*, 687 F.3d 514, 533 (2d Cir. 2012) (internal quotation marks omitted). AEDPA's time constraint "promotes judicial efficiency and conservation of judicial resources" and "safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh." *Acosta v. Artuz*, 221 F.3d 117, 123 (2d Cir. 2000).

A petitioner may secure equitable tolling of the limitations period in certain "rare and exceptional circumstance[s]." *Smith*, 208 F.3d at 17 (internal quotation marks omitted); *see Holland v. Florida*, 560 U.S. 631, 649 (2010). The petitioner must establish that (a) "extraordinary circumstances" prevented him from filing a timely petition, and (b) he acted with "reasonable diligence" during the period for which he now seeks tolling. *Smith*, 208 F.3d at 17. Attorney error generally does not rise to the level of an "extraordinary circumstance." *Baldayaque v. United States*, 338 F.3d 145, 152 (2d Cir. 2003). However, attorney negligence may constitute an extraordinary circumstance when it is "so egregious as to amount to an effective abandonment of the attorney-client relationship." *Rivas*, 687 F.3d at 538.

Here, we agree with the district court that an extraordinary circumstance impeded Martinez's timely filing because Denaro

"effectively abandoned" his client. **[A 9]** The focus of this appeal, however, is on the district court's holding, based upon our decision in *Doe v. Menefee*, 391 F.3d 147 (2d Cir. 2004), that Martinez was ineligible for equitable tolling because he had not acted with "reasonable diligence." **[A 10]**

As we explain below, in assessing whether Martinez's level of diligence rendered him ineligible for equitable tolling, the district court premised its conclusions on a misapplication of *Doe.* The district court specifically should have (a) considered the effect of Denaro's misleading conduct on Martinez's ability to evaluate his lawyer's performance, (b) inquired further into Martinez's financial and logistical ability to secure alternative legal representation, (c) inquired further into Martinez's ability to comprehend legal materials and file his own petition, and (d) tailored its "reasonable diligence" analysis to the circumstances of a counseled litigant.

## I.     The *Doe* Factors

To qualify for equitable tolling, a petitioner must "act as diligently as reasonably could have been expected *under the circumstances*." *Baldayaque*, 338 F.3d at 153 (emphasis in original). *Doe* designated four factors relevant to a diligence inquiry "in the attorney incompetence context": (1) "the purpose for which the petitioner retained the lawyer," (2) "his ability to evaluate the lawyer's performance," (3) "his financial and logistical ability to

consult other lawyers or obtain new representation," and (4) "his ability to comprehend legal materials and file the petition on his own." *Doe*, 391 F.3d at 175.

The first *Doe* factor, as the district court acknowledged, supports a finding in favor of Martinez. **[A 10]** Martinez hired Denaro to handle all his post-conviction relief, including a potential federal habeas petition. **[A 10]** The timely filing of that petition thus fit squarely within Martinez's reasonable expectations.

The second *Doe* factor, contrary to the district court conclusion, also supports a finding in favor of Martinez. Martinez's ability to evaluate his lawyer's performance was compromised by Denaro's active concealment of his firm's poor performance. The firm sent numerous billing statements and requests for information, implying ongoing work. **[BB 3-4]** Letters from the firm also consistently contained reassuring language. A May 4, 2009 letter, for example, promised the firm would "do what we can to help you." **[A 45]** An April 30, 2009 letter said the firm was "mak[ing] every effort to assist you." **[A 48]** A June 25, 2009 letter stated that Denaro had "thoroughly investigated and researched the appeal issues" and could bring to bear "forty-five years [of] legal experience" and a "record [of] favorable results" on Martinez's behalf. **[A 49]** A November 13, 2009 letter said that the firm was "working very hard to make this happen for you." **[A 51]** Although Denaro often left

Martinez waiting for months for updates on the case, the evident tendency of Denaro's correspondence would have been to lull Martinez into believing that the firm was hard at work during periods of non-communication.

The district court found that "[t]here is no reason to believe that Mr. Martinez could not evaluate Mr. Denaro's performance" because Martinez was able to critically analyze the lawyer's work in complaints filed years later. **[A 10]** However, the district court should have considered whether Denaro's written misrepresentations reasonably could have impeded and delayed Martinez's ability to evaluate his lawyer's performance at the time that it mattered and without the benefit of hindsight.

With respect to the third *Doe* factor, the record contains no clear indication that Martinez had the financial ability to easily obtain another lawyer, even if he had realized that his counsel had abandoned him. In addition, his incarceration would have created logistical obstacles. The district court asserted without further elaboration that Martinez "could have hired a new attorney," **[A 10]** but we do not see how this capability has been established on the record. We agree with Martinez's contention that the matter warranted further inquiry by the district court. **[BB 11]**

As for the fourth *Doe* factor, the record shows that Martinez had no legal expertise or training. **[A 31]** Although defendants

without legal training often file *pro se* petitions, there is no showing that Martinez has any special ability to comprehend legal materials. To be sure, Martinez ultimately was able to make several *pro se* filings, but we have previously noted that "[t]he fact that [a petitioner] was *eventually* able to draft a petition . . . does not mean that a duly diligent person would have done so sooner." *Nickels v. Conway*, 480 F. App'x 54, 58 (2d Cir. 2012) (summary order) (emphasis in original). The district court asserted that Martinez "could have . . . drafted the petition himself with the assistance of the prison's resources." **[A 10]** Yet, again, this capability—and more specifically that it would have yielded a timely filing—was not clearly established on the record, given Martinez's reliance on retained counsel. So we agree with Martinez's contention that this matter also warranted further inquiry. **[BB 11]**

## II.    Reasonable Diligence and the Counseled Litigant

When analyzing the applicable *Doe* factors, the district court emphasized the fact that, between the date that Martinez hired Denaro and the date that the limitations period expired, "the record is devoid of evidence indicating that Mr. Martinez inquired about a potential federal habeas corpus petition." **[A 10]** We cannot agree, however, with the suggestion that Martinez would have had to specifically ask his attorney about filing a habeas petition, or undertaking any other specific initiative (as opposed to the general

pursuit of post-conviction relief), in order to satisfy the "reasonable diligence" standard.     Although we have previously found reasonable diligence when attorneys ignored their clients' express instructions to file habeas petitions, *see Nickels*, 480 F. App'x at 57-59; *Dillon*, 642 F.3d at 363, plainly no one is born with an understanding of habeas corpus and its deadlines.   While we expect a litigant proceeding *pro se* to educate himself regarding the various methods of appealing a conviction, we also recognize that a litigant proceeding with counsel may reasonably trust his attorney to know the deadlines without client-provided research assistance.[2]

The district court placed particular weight upon our statement in *Doe* that "it would be inequitable to require less diligence from petitioners who are able to hire attorneys than from those who are forced to proceed *pro se*." *Doe*, 391 F.3d at 175. **[A 9]**  It is important to clarify that statement.  Although we do not require less diligence from counseled litigants, it should be recognized that a counseled litigant may display the same level of diligence in a different way.  A litigant with an attorney, for example, may reasonably delegate certain tasks and decisions to the attorney. The litigant may then

---

[2] Ordinarily, of course, a litigant who relies on his attorney bears the risk of his agent's negligence (with respect to missed deadlines and otherwise). *See Lawrence v. Florida*, 549 U.S. 327, 336 (2007). However, when an attorney actually impedes timely filing in circumstances (such as abandonment) that are extraordinary, the petitioner's reasonable reliance on counsel is relevant to his reasonable diligence for the purposes of equitable tolling.

reasonably rely upon the attorney to do the necessary work, if, as here, the attorney leads the client to believe that he is fully engaged in the matter.

We stated in *Doe* that "the act of retaining an attorney does not absolve the petitioner of his responsibility for overseeing the attorney's conduct or the preparation of the petition," *id.*, and we still endorse that statement. Martinez, however, not only swiftly secured representation but also made efforts to reach out to Denaro and ensure that the attorney was diligently pursuing post-conviction relief. Martinez repeatedly wrote to Denaro to inquire about his case and responded promptly each time his attorney asked for information. **[RB 12-13, BB 9]** Eight months after receiving his last communication from Denaro, which itself was ten months after the habeas corpus deadline had passed, Martinez filed a writ of error *coram nobis pro se* in August 2010 and wrote letters to the Grievance Committee in September 2010, December 2010, and August 2011. **[RB 12-13, BB 10]** The district court stated that, because the Grievance Committee letters were sent after the habeas deadline had passed, "that evidence is not relevant to the court's equitable tolling analysis." **[A 10]** However, given that Martinez seeks tolling for the entire period between when his judgment became final and when he ultimately filed his habeas petition *pro se*, his actions after the deadline passed remain relevant to the tolling analysis. These

letters, as well as Martinez's efforts to communicate with his attorney and his *pro se* filings, all indicate diligence.

To be sure, significant gaps in the record also indicate that Martinez may have been inactive for portions of the time for which he now seeks tolling. **[RB 6-10, 18-19]**  However, Martinez must be given the opportunity to explain his activity level during these time periods. Whether the gaps truly indicate inactivity, and whether such inactivity overcomes the acts of diligence that Martinez did exhibit, will be matters for the district court to examine on remand.

Viewing the record in the context of Denaro's extraordinary misconduct, we conclude that there are significant indications that Martinez acted with reasonable diligence and that these indications justified a more detailed inquiry and findings by the district court. In light of these findings and in light of our clarification of *Doe*, we remand this matter to the district court for a hearing on the issue of diligence.

**CONCLUSION**

For the reasons stated above, we VACATE the district court's order dismissing the petition and REMAND for further proceedings consistent with this opinion.